HOCKETT v. OWENS et al.
No. 14475.

Court of Civil Appeals of Texas.
Dallas.

Jan. 25, 1952.

Rehearing Denied March 21, 1952.

Dwight Whitwell, McKinney, for appellant.

Paul Worden and H. H. Neilson, both of McKinney, for appellees.

BOND, Chief Justice.

This is an appeal from a judgment of the District Court of Collin County to the effect that the plaintiff N. K. Owens has an existing, unrestricted easement by prescription in and over a roadway located wholly on the defendant R. M. Hockett's land, extending along his west fence line 400½ yards long and 20 feet wide, from Farmersville-Merritt Road north to a gate opening into plaintiff's land; and that the said road is a public road dedicated by the defendant and his successors in title to the public; and the plaintiffs being members of the general public residing in Collin County, have a permanent and perpetual right of use in, on and over the road. A permanent injunction was granted, directed to

the defendant, his agents, servants, and employees effectively restraining them from further obstructing and interfering with the plaintiffs, agents, servants, tenants, and employees in the free and unabating use of said road, as a means of travel over the road to and from plaintiff's farm; and a mandatory injunction directed to defendant to forthwith remove from said road and right of way all obstructions placed thereon by him, his agents, servants, tenants, and employees on April 4, 1951; and to forthwith grade, smooth and level said road and the surface thereof to make said road passable for ordinary motor vehicles.

The judgment is based upon jury findings, to the effect: (1) That the plaintiff N. K. Owens had used the road in question continuously and uninterruptedly for ten years or more immediately before April 4, 1951; (2) that such use was open, visible and notorious for a period of ten years or more; (3) that the use was adverse and hostile to the defendant R. M. Hockett and those under whom he claims title for ten years or more; (4) that the use was under a claim of right; (5) that during said period of ten years, Owens' right of use was exclusive and inconsistent with the use of the defendant Hockett and those under whom he claims; (6) that the defendant Hockett and his predecessors in title knew, or by the use of ordinary care should have known, for ten years or more immediately before April 4, 1951, that Owens and his tenants were claiming the right to use such road adversely to and against the right of Hockett or his predecessors in title; (7) that the road was used and traveled by the public generally, continuously and uninterruptedly for ten years or more before April 4, 1951; (8) that the public's use and travel was open, visible and notorious; (9) that such use by the public was adverse to the defendant Hockett and those under whom he claims title; (10) that the use of the road by the public was under a claim of right; (11) that the public's use was with the knowledge of the defendant R. M. Hockett and those under whom he claims, and without interposing objection thereto; (12) that the road was dedicated by H. H. Smith (R. M. Hockett's predeces-

sor in title) to the public; and (13) that the road in question had been dedicated as a public road. Subsequent findings of the jury were to the effect that the road was not a "way of necessity"; that the fee to the road was vested in the defendant Hockett, and that it was Hockett's homestead. Such subsequent findings are immaterial to any issue raised in this appeal; thus will not be further noticed.

In due time, at the close of the testimony the defendant moved for instructed verdict; and, afterwards, for judgment non obstante veredicto. The trial court over defendant's objections overruled the motions and entered the judgment on the verdict of the jury. The defendant then filed motion for new trial which was also overruled. To all of which action of the trial court the defendant excepted, gave notice of and perfected this appeal.

In the aforesaid motions the defendant contends that there was not any evidence in support of plaintiff's cause of action; no evidence to support the findings of the jury; and on the several issues submitted, and the findings of the jury thereon were against the evidence; and that the trial court erred in entering the judgment and overruling defendant's motion for new trial.

Germane to the several assignments of error, the defendant presents appropriate points directed severally and collectively to the findings of the jury as having no support in evidence and against the evidence; and to the aforesaid judgment of the trial court. In addition, the defendant raises points of error not set out in his motion for new trial as being fundamental errors, to wit: (1) Lack of necessary parties,— holders of outstanding vendor's lien against the land upon which the road is located; (2) the road as established, and dedication to the plaintiff and the public by the judgment of the court—20 feet wide and 400½ yards long—is in excess of that claimed in plaintiff's petition as "20 feet wide and 375 feet long"; (3) the dedication of the road for public use by H. H. Smith as per the judgment of the court has no support in evidence,—no evidence that Smith owned the land in fee at the time of the purport-

ed dedication; (4) in plaintiff's petition he seeks a permanent easement by prescription in and over the road in question, and, alternatively, a decree of dedication to the public; while the judgment of the court decrees both an easement by prescription and a public road by dedication; and (5) the judgment of the court is based upon conflicting findings by the jury, in that the jury found to special issue No. 11 that the public's use of the road in question was with the knowledge of Hockett and those under whom he claims, and without objection by them; such findings being in effect a finding that the public's use was a permissive use of the road; whereas, the jury's further findings to issues 9 and 10 were to the effect that the public's use was adverse and hostile under a claim of right, thus the judgment based upon such conflicting findings is fundamentally erroneous.

The view we take of the vital primary issues involved in this appeal makes it unnecessary to give full consideration to appellant's claims to fundamental errors. They are overruled. The vital issues are: Had the plaintiffs acquired a prescriptive right to the use of the road in question, admittedly on the land of the defendant, as a passageway to and from their farm? And, alternatively, did the defendant and his immediate predecessor in title dedicate the road to the public for the public's use? If the evidence raises the necessary elements in support of either issue, the findings of the jury and the judgment of the trial court based thereon should be affirmed.

■ The burden of proving that the plaintiffs have a prescriptive or dedicatory use of the roadway in question, in absence of contract or express grant, was upon the plaintiffs. The essential and necessary elements are that the use and enjoyment of said road was exclusive, uninterrupted and continuous under a claim of right *adverse* to and *inconsistent* with the rights of the owner (defendant) of the fee. Above all, a prescriptive and dedicatory right against the owner of land must be "adverse," signifying acquirement by the statute of limitation by "actual and visible appropriation," commenced and continued under a claim of right "inconsistent" with and "hostile" to the claim of the owner. Art. 5515, R.S. Courts are uniform in holding that failure to establish any of the essential elements by a preponderance of the evidence, such claim of an easement by prescription or dedication to the public cannot be maintained. The requisite elements to establish the easements are as in establishment of title by limitation in trespass to try title. 15 Tex.Jur., p. 812, secs. 40, 41.

■ The mere use of a road on another's land, either by license or permission of the owner, is not within itself adverse and hostile, and affords no basis for prescription; and the fact of the owner's acquiescing and consenting to the use, and knowing that the road is being so used, does not import that such use was adverse and hostile to the owner's right of use and possession; nor does such import that the user of the road has or is asserting adverse use or possession. Weber v. Chaney, Tex. Civ.App., 5 S.W.2d 213.

In the case of Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622, 626, the Supreme Court held that "An important essential in the acquisition of a prescriptive right is an adverse use of the easement." And there quotes with approval 17 Am.Jur., Easements, sec. 63, p. 974 (citing cases in support): "Generally, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership." The Supreme Court further cites, in the same authority, sec. 67, p. 978: "The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking." Citing among other cases, Klein v. Gehrung, 25 Tex.Supp. 232, 78 Am. Dec. 565.

■ It would seem from the evidence that the "good neighbor policy" has been breached by each of these good neighbors,—tenant farmers and friends. The gap leading from the road into defendant's land had ofttimes been left open to the an-

noyance, displeasure, and discomfort of the defendant, in letting defendant's stock range at large, which evidently led the defendant, in retaliation, to close the road to plaintiffs, plow deep furrows through the length of the road, place barricades,—plows, tractors, farm implements and the like—thus effectively preventing plaintiffs and all others from traveling said road. The use of the roadway and gap had long been covenants of good neighborly feeling, agreement, and reciprocal good will. The roadway and gap were convenient appurtenances to the farms of each of the parties as a means of travel to and from their farm housings and improvements, used and enjoyed respectively by each, free and uninterrupted for more than 20 years. During all that period of good neighborly feeling between the plaintiff and defendant and their predecessors in title, there was no adverse or hostile claim of right asserted against the free use in and over the road by either of the parties. There is no evidence that the road had ever been dedicated as a public road by the owner of the fee, and no evidence that the plaintiff had ever claimed an easement by prescription. The use of the roadway in common with the owner of the fee is insufficient to ripen into a prescription, though the use was for the prescriptive period of ten years or more. Gill v. Pringle, Tex.Civ.App., 224 S.W.2d 525. Manifestly, the court in submitting the questions to the jury, and the jury in giving affirmative answers, were prompted in "balancing of equitable rights," and in an effort to restore the status of friendly relations long existing between these neighbors. The testimony of more than 370 pages is not materially in dispute; most of it relates to plaintiff's "damage," "way of necessity," and matters not material to the vital issues here involved.

On the issue of dedication and easement by prescription, the plaintiff N. K. Owens testified after designating on map in evidence the respective adjacent farms owned by him and Mr. Hockett, the location of the road in reference thereto, and testified as to the use of that road by him, his tenants and employees and the public generally for more than 21 years, and his claim of such use of the road for ten years or more under dedication as a public road prior to April 4, 1951; he testified that the road was well known, laid out and used by the public, and that he never asked anyone for permission to use the road and no one ever tried to stop or prevent him or his tenants or members of the general public from using the road. That the defendant and his predecessor in title (Mr. H. H. Smith) knew he was using the road for his benefit and that it was used by his tenants and by all who had any business at his farm and the farm of the defendant Hockett. At no time did Mr. Smith stop him from using the road, or make any objection to his using it prior to the incident, supra, by which this suit arose. Mr. Owens further testified that when Mr. Smith owned the land the road in question was open, only fenced on the west side, no gate or stopgap at the south end leading into the Farmersville-Merritt road; that at one time (1943) Mr. Smith wanted to put a gap at the south end to pasture his land. We quote: "He came to town and told me that my boy had stopped his hands down there from stopping up the road. And I said, 'Well, I don't think you can do that.' He said, 'Mr. Owens, we have always got along, and we will still get along.' He told me 'You just tell where you want the fence and I will put it there' * * * and told him where to put the road * * along the east side of the road, the entire length of the road. He put the fence where I told him." Mr. Owens further testified that this fence remained there for six or seven years and after Mr. Smith sold the land to Mr. Hockett, Mr. Hockett removed the fence. Further testifying, Mr. Owens said that subsequent to the removal of the fence, Mr. Hockett wanted to pasture his land and to put up a temporary two-wire fence at the south end and across the road to keep his cattle enclosed within his pasture, and that a negro man working on Mr. Hockett's farm asked permission of him to construct the fence with a gap for convenience in going in and out of his (Owens') farm. That he granted Mr. Hockett the permit and the fence was accordingly

constructed. Mr. Owens further testified that for more than 21 years the county constructed and maintained a bridge or culvert near the south end of the road in controversy, and for many times since then, the county has graded said road and on one occasion Mr. Smith told him that if the road was graded, he (Smith) would pay half of the expense.

On redirect examination Mr. Owens testified:

"Q. Now then, you were asked the question about everybody using this road that has been closed up. And the question was put to you that they used it with your permission and you used it with their permission. Now then, did you ever ask anybody's permission to let you use this road that has been closed up? A. No, sir.

"Q. Did you ever need anybody's permission? A. No, sir.

"Q. Why did you use that road then? A. Because it was there open.

"Q. Did you use it as a matter of right? A. Yes, sir, that's right, yes, sir."

Mr. Smith was offered by defendant as a witness and, after giving evidence as to the location of the road and its environment, the use of the road at the time he purchased the land in 1936 until he sold it to Mr. Hockett, gave his version of the incident of putting a stopgap at the mouth of the road and a fence on the east side of the road as related by Mr. Owens. He testified:

"Q. With respect, Mr. Smith, about Mr. Owens using that road with your permission: Now he used it,—it was all right and agreeable with you for him to use it, wasn't it? A. Perfectly.

"Q. Did he ever ask you to let him use it? A. He did not.

"Q. Did you ever try to stop him from using it? A. I never did.

"Q. Then there. wasn't any permission to it, then, was it? A. Only it was all right with me.

"Q. Only it was with your consent and with your knowledge? A. That's right.

"Q. You knew by him objecting to the gap being there that he was claiming a right to use that road to his place, didn't you? A. I woke up to that fact and it was all right, because I needed that road, too.

"Q. You were satisfied that he was claiming that road, to pass over that road? A. Oh, yes, I realized that immediately."

■ Summarizing the evidence, admitted and proven, the situation prevents the conclusion that the road in question is a neighborhood easement by permission of the owners, and for the use of any and all persons wishing to go to and from the farms owned by plaintiffs and defendant; and that such right of use at all times was, and is with the tacit consent of the owners, unlimited, subject only to the domination of the owners of the fee; that the owners have never surrendered their possessory rights over the road and no use has been exercised inconsistent with and hostile to the owners. The mere fact that the plaintiff asserted a claim of right in objecting to Mr. Smith's putting a stop gate at the mouth of the road, and allowing a fence to be constructed the full length of the road on the east side, cannot be construed as other than a friendly, neighborly suggestion, no thought of adverse or hostile claim of right to the owner of the fee, and, if so, it never ripened into an easement by prescription by the statute of limitation of ten years. Vernon's Ann.Civ.St. art. 5510. It is uncontroverted that the defendant owned the land, that he and his predecessor in title had always used and enjoyed the road, uninterrupted, along with all others; and at no time ever surrendered or lost fee simple title, or use of the road. Since Hockett and his predecessors did not part with their title, and have continuously used the road thereon consistent with their title, the plaintiffs cannot claim adverse and hostile rights against the owners, and thereby deprive the owners of the free and uninterrupted use, and to the exclusion of all others.

It follows that the judgment of the trial court is reversed and here rendered in favor of the defendant; the injunction dissolved and the mandatory orders set aside.