## N. K. Owens et al v. R. M. Hockett

No. A-3632. Decided October 15, 1952.
Rehearing overruled November 12, 1952.
(251 S. W., 2d Series, 957.)

*Wallace Hughston* and *Paul Worden,* both of McKinney, for petitioners.

The Court of Civil Appeals erred in holding that there was no evidence to support the jury finding that the road had been dedicated to the public; no evidence to support the finding that petitioners have a private easement in the road, and no evidence to support the finding that the public had acquired a right to use the road as a public road by prescription. Brown v. Kelley,

212 S.W. 2d 834; Huston v. Throckmorton County, 215 S.W. 2d 387; Moore v. McLellan County, 278 S.W. 341.

*Dwight Whitwell,* of McKinney, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

Petitioners instituted this suit against the respondent, R. M. Hockett, for damages and for mandatory injunction to require Hockett to remove a fence which was erected by him across a road on or about April 4, 1951, and to remove certain obstructions placed in the road, and to "grade, smooth and level" said road, and "to put said road in as good and passable condition as it was immediately prior to April 4, 1951". Petitioners alleged in their petition four separate and distinct theories as a basis for their contention that they were entitled to the relief prayed for. They alleged (a) that they had acquired a private easement by prescription and thereby were entitled to use the road without interference; (b) that the public had acquired a public easement by prescription; (c) that the road in question had been dedicated to the public for a road and that such dedication had been accomplished by the acts of defendant and his predecessors in title and by the acceptance of such dedication by the public, and (d) that the petitioners were entitled to a way of necessity.

All theories were submitted to the jury. The jury findings were favorable to the petitioners on theories (a), (b) and (c), and upon such findings the trial court rendered judgment for the petitioners. The trial court's judgment was reversed and rendered in favor of the respondent, the injunction was dissolved, and the mandatory injunction was set aside by the Court of Civil Appeals. 247 SW 2d 412. This Court granted writ of error.

The first point of error in the application for the writ is that the Court of Civil Appeals erred in holding that there was no evidence to support the jury findings that the road had been dedicated as a public road.

The second and third points of error in the application are to the effect that the Court of Civil Appeals erred in holding there was no evidence to support the jury findings that petitioners have a private easement in the road in question by prescription, and that the public had acquired a right to use the road as a public road by prescription.

The judgment of the trial court should be sustained if there is evidence to support either of the theories of the petitioner. We have examined the entire record and have reached the conclusion that the evidence supports the finding of the jury on the issue of dedication. The evidence has been viewed in the light most favorable to the petitioners, discarding all adverse evidence, and we have given credit to all evidence favorable to the verdict of the jury. It, therefore, becomes unnecessary for us to decide the remaining two points of error.

1, 2 Our courts recognize the doctrine that a dedication of land to public use need not be shown by deed, nor by public use for any particular length of time. It is sufficient if the record shows unequivocal acts or declarations of the landowner, dedicating same to public use, and where others act on the faith of such dedication, the land owner will be estopped to deny the dedication, or to make any future use of the property inconsistent with any purpose for which the land was dedicated. Common law dedications, such as the one here involved, are subdivided into two classes, express and implied. "In both it is necessary that there should be an appropriation of land by the owner to public use, in the one case by some express manifestation of his purpose to devote the land to the public use, in the other by some act or course of conduct from which the law will imply such an intent." Elliott, Roads and Streets (2d Ed.) p. 121; C. J. S. 26, p. 65, Sec. 13; Oswald v. Grenet, 22 Texas 94; Wolf v. Brass, 72 Texas 133, 12 SW 159; Evans v. Scott, 37 Tex. Civ. App. 373, 83 SW 874; Tribble v. Dallas Ry. & Terminal Co., 13 SW 2d 933, writ refused.

Mr. Elliott further says:

"It is essential that the donor should intend to set the land apart for the benefit of the public, for it is held, without contrariety of opinion, that there can be no dedication unless there is present the intent to appropriate the land to the public use. If the intent to dedicate is absent, then there is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. . . . If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit

him to assert that there was no intent to dedicate, no matter what may have been his secret intent." Sec. 124.

In Abbott v. Mills, 3 Vt. 521, 527, 23 Am. Dec. 222, it was said "the act of throwing open the property to the public use, without any other formality, is sufficient to establish the fact of a dedication to the public; and if individuals, in consequence of this act, become interested to have it continue so, . . . the owner cannot resume it."

The evidence bearing on the question of dedication has been quoted rather fully in the opinion rendered by the Court of Civil Appeals, and, in our opinion, clearly supports the favorable answer of the jury to the issue as to whether the petitioners had established, by a preponderance of the evidence, that the road involved had been dedicated to public use. A dedication may be shown by circumstance. Now, what was the situation with reference to this road in 1943, the date Mr. Smith, then owner of the 47½ acres of land over which this road traverses, had the conversation with the petitioners which resulted in the construction of a fence on the east side of the road, thereby cutting the road off from the remainder of the tract? For many years prior to 1943, the road had been used by the public. It had been kept in repair and was at all times in such condition as to afford comfortable access to and from the land owned by petitioners. Smith knew the road was being used by the petitioners and the general public. He knew and others knew that the county had used its equipment many times to repair and grade the road; he knew there had been a fence immediately to the west of this road for many years, and that this fence was recognized by everyone in the community as the common boundary between the Bertha Clark tract on the west and the 47½ acres tract (now respondent's) on the east; he knew and everyone else knew that there was a fence along the south line of the 47½ acres tract, and also a fence along the south line of the Bertha Clark tract immediately to the east; he knew that petitioners had been using that road for many years; that petitioner, N. K. Owens, for instance, in traveling from his residence west of the Clark place, would travel east along the Farmersville-Merit Road, which was located just south of the Clark and Hockett tracts, turn to the north, cross a bridge, enter through an open gap, and travel the road involved here in a slightly northeasterly direction for a distance of some 400½ yards to a gate which opened into the land owned by petitioner, N. K. Owens, and was occupied by petitioner, H. E. Owens. With

full knowledge of all these facts, Smith, respondent's immediate predecessor in title, went to Owens and asked for permission to put a gap at the south end of the road. This was in 1943, and according to the testimony, Smith, instead of placing a closed gap or fence across the road, erected, at his expense, a fence along the east side of the road and for the entire length thereof. After this fence was erected, the road was situated within a lane, and was completely cut off from the rest of the property. Smith, never at any time, objected to Owens or anyone else using the road; the road remained fenced on the west and east sides for five or six years after 1943; respondent testifying that the road was fenced on both sides when he bought the land in 1948; that he had been familiar with the property and the road and had knowledge the road was there for twelve or fifteen years, and knew the fences were on both sides of the road when he purchased the property; he knew Owens was using the road, and on one occasion asked Owens for permission to place a gap at the south end. This permission was granted and the gap remained closed for about two weeks. However, such arrangement did not interfere with the use of the road by Owens and the public. Respondent did not object to anyone using the road until April 4, 1951, at which time he, admittedly, built the fence across the road, plowed the road its entire length leaving deep furrows therein, and left the plow in the center of the road for the purpose of preventing the petitioners from returning to their property by the use of the road.

These facts are evidence of an implied common law dedication. As said in the case of Brown v. Kelly, Tex. Civ. App., 212 SW 2d 834 "* * * However, the theory of implied dedication carries with it the idea that the owner consented to the use of his land as a highway to the extent that the court will hold that he dedicated it to public use, whether by express words, overt acts, or even by such inaction on the part of the owner as would justify a conclusion that he intended to dedicate his land to public use."

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered October 15, 1952.

Rehearing overruled November 12, 1952.