**Humberto GARZA, Appellant,**

v.

**Antonio GARZA et al., Appellees.**

**No. 1013.**

Court of Civil Appeals of Texas, Tyler.

May 26, 1977.

John A. Pope, III, Pope & Pope, Rio Grande City, for appellant.

Hector S. Lopez, Alice, for appellees.

MOORE, Justice.

This is an appeal from an action in the nature of trespass to try title filed by appellant, Humberto Garza, against appellees, the County of Jim Hogg (County) and Antonio Garza, Alicia (Garza) Ramos, Roberto Garza, Medardo Garza, Jr., and Leonardo Garza (the "Garza defendants"). Appellant, Humberto Garza, filed the suit on September 5, 1973, and as grounds for a cause of action alleged that on December 1, 1972, he was the owner of certain lands situated in Jim Hogg County, Texas, and that the County of Jim Hogg, acting by and through its Commissioner's Court and the other defendants named in such suit, had taken possession of a portion of his land and had thereby cast a cloud upon his title by virtue of their claim that a certain road situated on his land was a public road. Alternatively, appellant sought a declaratory judgment declaring the road to be a private road and ancillary thereto, sought a permanent injunction restraining the county from working the road with its equipment and enjoining the other Garza defendants from using the road without his permission. Appellees answered with a plea of "not guilty" and affirmatively alleged that the road in question constituted a public road by either dedication or by prescription. After a trial before the court, sitting without a jury, the trial court rendered a take-nothing judgment against appellant from which he perfected this appeal.

We affirm.

The road in question is generally referred to throughout the record and briefs as the "Palo Blanco" or "Palo Blanco-Alejandrena" road. The pleadings, however, show that the road in controversy consists of the road known as the Palo Blanco road running north and south as well as a branch road emanating therefrom at the extreme north end thereof and running west. The

Palo Blanco road runs generally from north to south for a distance of approximately one and one-half miles. At the extreme north end thereof it connects with another road running east to Farm Road No. 649. The portion of the lateral road in controversy extends from the north end of the Palo Blanco road in a westerly direction for a distance of approximately 2,500 feet. From there it goes on west to the Zapata County line. The Palo Blanco road is situated on the eastern edge of Survey No. 269 and is owned by appellant. The lateral road emanating therefrom is situated on the northern edge of Survey No. 269. Prior to 1966, Survey No. 269 was a part of the Martiniano Garza Estate. Martiniano Garza was the father of appellant and grandfather of the Garza defendants. When the estate was partitioned in 1966, appellant, Humberto Garza, was allotted the east portion of Survey No. 269 on which the Palo Blanco road is situated. The land allotted to the other Garza defendants was situated to the west of the land allotted to appellant. The lateral road emanating from the Palo Blanco road is used by some of the Garza defendants as a means of ingress and egress to the land allotted them in the partition. The lateral road is also used by Antonio Garza, appellant's brother, as a means of ingress and egress to his home situated on land owned by him lying to the north of the lateral road.

At the request of appellant, the trial court filed extensive findings of fact and conclusions of law, a summary of the findings deemed material to this appeal are as follows: (1) in 1953 the county executed a right-of-way deed to Humble Oil & Refining Company permitting the company to lay a pipeline across the Palo Blanco road, and the appellant had knowledge of such action and acquiesced therein; (2) in 1957 appellant appeared before the Commissioner's Court and requested the county to lane and fence a portion of the Palo Blanco road; (3) the Commissioner's Court granted appellant's request; (4) in 1964 appellant filed a petition with the Commissioner's Court under Tex.Rev.Civ.Stat.Ann., art. 6705 requesting the county to close the Palo Blanco road, alleging in his petition that the road was a county road; (5) appellant appeared at the hearing thereof and urged that the county road be closed; (6) after the hearing the Commissioner's Court closed a portion of the road at its southernmost terminus but refused to close the remainder of the road; (7) appellant did not appeal therefrom and such ruling and the judgment of the Commissioner's Court became final; (8) on September 5, 1973, appellant filed a verified petition under Tex.Rev.Civ.Stat.Ann. art. 6705, requesting the Commissioner's Court to close the remainder of the Palo Blanco road, alleging in his sworn petition that: "That the road is a public road, but no longer serves the public"; (9) appellant personally appeared at the hearing together with his attorney, after which the court entered a judgment refusing to close the road; (10) appellant did not appeal from such judgment and the judgment became final; (11) appellant has neither alleged in his pleadings nor offered proof that such sworn allegations were inadvertently made by mistake, fraud or duress and as a result he is now precluded from asserting in this action that the road in question is not a public road; (12) the county has graded and improved and maintained the Palo Blanco road with public funds continuously for a period of twenty-five years or over and the appellant had full knowledge and acquiesced therein and received the benefits of such improvements and maintenance during such period; (13) the road has been open, visible, and continuously used and recognized by the general public for a period of twenty-five years or over prior to the time the appellant acquired his title by reason of a partition of the said lands and appellant had knowledge of such use during such period of time and has at all times acquiesced in and recognized the road as a public road; (14) the State of Texas has recognized the same as a public county road and has taken periodic official traffic surveys on the road; (15) the public school system of the county has used and continues to use the roads in question daily to transport children to and from the county

schools; (16) the public road described in the appellant's pleadings has never been either abandoned by the public or closed by the Commissioner's Court or any other court and remains open to this date; (17) the road in question runs through Surveys 39 and 270; (18) the lateral road is necessary to Medardo Garza, Roberto Garza, Alicia Ramos and Leonardo Garza as a means of ingress and egress to their land; (19) the lands owned by them as a result of the partition of the estate are enclosed entirely by the lands owned by the appellant and others and that at one time all of the lands owned by the Garza parties, and traversed by the road in question, were owned by Martiniano Garza, deceased, the father of the appellant and grandfather of the other Garza defendants; (23) the lateral road emanating from the Palo Blanco road is used by the Garza defendants as a means of ingress and egress to the lands which they received in the partition emanating from a common source, and as to them, that portion of the road which crosses lands owned by appellant, constitutes a road by necessity and an implied dedication thereof and should not and cannot now be legally closed; and (24) the Palo Blanco road is a public road.

Appellant seeks a reversal by four points of error. He maintains that the trial court erred in finding and concluding that the road in question was a public road. Specifically, he contends that the road is not a public road because there is no evidence that the road was ever dedicated to the public or acquired by the public through prescription. Alternatively, he contends that such finding is against the overwhelming weight and preponderance of the evidence.

It is undisputed that no part of the road in question has been laid out under any of the provisions of the statute, Tex.Rev.Civ. Stat.Ann. art. 6702, et seq., and it is likewise undisputed that no part of the road in question has ever been formally dedicated to the county by any instrument in writing.

Since the evidence relating to the Palo Blanco road as distinguished from that relating to the lateral road is somewhat different, we will first direct our attention to whether or not there is any evidence to support the trial court's finding and conclusion that the Palo Blanco road is a public road.

Appellant testified that the Palo Blanco road has been in existence since 1945. In 1957 appellant appeared before the Commissioner's Court of Jim Hogg County and requested the county to lane and fence a part of the road. In 1964 appellant made an effort to have the county close the road by filing a petition with the Commissioner's Court in which he alleged that the Palo Blanco road was a public road. In response to his petition, the Commissioner's Court closed a part of the road at its southern terminus but refused to close the northern portion of the road. In 1973 appellant filed another petition with the Commissioner's Court of Jim Hogg County requesting the county to close the remaining part of the Palo Blanco road, alleging under oath that the road was a public road. After a hearing the Commissioner's Court refused to close the remaining portion of the road. It is undisputed that a Mr. Molina, an employee of an oil company, maintains a residence at a point near the southern terminus of the Palo Blanco road. It is likewise undisputed that at the time appellant filed suit the county school buses used the road to transport the Molina children to and from the public schools and had used the road for that purpose since 1964. Appellant testified that oil companies also used the road for the purpose of ingress and egress to their wells situated near the southern terminus of the road. The evidence further shows that the county has continuously maintained the road and has expended funds for the purposes of grading and placing caliche on the road. Appellant did not dispute the fact that the county had so used and maintained the road. To the contrary, he alleged that by continuing to grade and maintain the road the county was destroying his natural grasses and sought to enjoin the county from maintaining the road.

Although there is no direct evidence of any specific declaration on the part of the ancient owners indicating an intent to dedicate the road to public use, the record reveals that appellant admitted in 1964 and again in 1973 that the road had in fact been dedicated to the public for public use. He also admitted in his testimony that the county had maintained the road and that it had been open to the public generally since 1945.

■ With regard to the lateral road extending west from the Palo Blanco road, the evidence shows that this road was first used by appellant's brother, Anastacio, in 1938 as a means of ingress and egress to lands owned by him located west of the land owned by appellant. The record further shows that in 1950 when an oil well was being drilled on Anastacio's land, he gave the oil company permission to open the road by grading the same with its equipment. The record further shows that another brother of appellant, Antonio Garza, owns land located north of the lateral road in question. Antonio moved on his land in 1959 and since that time has continuously used the lateral road as a means of ingress and egress to his home. While serving as a County Commissioner of Jim Hogg County in 1966, Antonio secured the services of Zapata County employees and Zapata County road equipment and made extensive improvements by grading and placing caliche on the lateral road in question from the point where it emanates from the Palo Blanco road and then on to his home situated to the north of the lateral road. He also placed a cattle guard at the point where the lateral road and Palo Blanco road connect to the road leading east to Farm Road No. 649. Antonio served as County Commissioner for fifteen years during which time the county maintained the lateral road. The County Judge testified that he had used the road to visit Antonio's home. From an aerial photograph it appears that the lateral road is well defined on the ground. There is nothing in the record showing that appellant ever objected to the improvements made on the road by his brother Antonio or that appellant ever attempted to close the road until shortly before he filed the present suit. According to appellant's testimony, he has no desire to close the lateral road so as to deprive his brother or the other Garza heirs of its use. He testified he only wants to place a lock on the gate at the entrance of the road and to give each of them a key. We have concluded that the foregoing evidence raises a fact question upon the issue of whether both segments of the roadway in question became a public road by implied dedication. The rule relating to the establishment of public roads is stated by Judge Gaines in the early case of *Worthington v. Wade*, 82 Tex. 26, 17 S.W. 520 (1891), as follows:

"All roads which have been laid out and established by authority of the commissioners' courts are public roads. Rev.St. art. 4359 [now Tex.Rev.Civ.Stat.Ann. art. 6702, et seq.]. A road not originally established under the statute may become public by long-continued use and adoption as such by the county commissioners with the assent of the owner or by prescription. A road may also become public in the sense that the public have the right to use it, by dedication."

■ In the case of *Owens v. Hockett*, 151 Tex. 503, 251 S.W.2d 957, 958 (1952), the court quoted with approval language in the case of *Abbott v. Mills*, 3 Vt. 521, 527, 23 Am.Dec. 222, which we think is equally applicable here. In that case the court said: "the act of throwing open the property to the public use, without any other formality, is sufficient to establish the fact of a dedication to the public; and if individuals, in consequence of this act, become interested to have it continue so, * * * the owner cannot resume it."

In the case of *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 882–83 (1960), the Supreme Court stated:

"Common law dedications, such as the one here involved, are subdivided into two classes, express and implied. This dedication falls in the latter class. The unequivocal acts and conduct of the petitioner, O'Connor, and his predecessors in

title, show an implied intention to appropriate the roadway to public use. "* * If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate * *.' Elliott, Roads and Streets (2d Ed.), Sec. 124, p. 121."

In *Dunn v. Deussen*, 268 S.W.2d 266, 269 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.), the court quoted from the Owens case as follows:

" . . . 'However, the theory of implied dedication carries with it the idea that the owner consented to the use of his land as highway to the extent that the court will hold that he dedicated it to public use, whether by express words, overt acts, or even by such inaction on the part of the owner as would justify a conclusion that he intended to dedicate his land to public use.'

"A dedication may be shown by circumstances. *Owens v. Hockett*, supra."

The theory of implied dedication carries with it the idea that the owner consented to the use of his land as a public road to the extent that the courts will hold that he dedicated it to public use, whether by express words, overt acts or even by inaction on the part of the owner as would justify a conclusion that he intended to dedicate his land to public use. *Mallett v. Houston Contracting Co.*, 388 S.W.2d 216 (Tex.Civ.App. —Beaumont 1965, writ ref'd n. r. e.), *Brown v. Kelley*, 212 S.W.2d 834, 837 (Tex.Civ.App. —Fort Worth 1948, no writ). The question of whether a public right-of-way has been acquired by implied dedication is a question of fact. See 28 Tex.Jur.2d Highways and Streets sec. 6, p. 43.

Upon viewing the evidence in a light most favorable to the judgment, as we are required to do, we have concluded that the evidence supports the trial court's finding, and conclusion that the roadway in question is a public road by reason of an implied dedication. After considering all of the evidence, both that in favor of the findings and judgment, we find that we cannot agree with appellant's contention that the judgment is so against the overwhelming weight and preponderance of the evidence so as to be unjust.

Accordingly, the judgment of the trial court is affirmed.