Ned A. FORD et al., Appellants,

v.

Frank R. MOREN et ux., Appellees.

No. 8656.

Court of Civil Appeals of Texas, Texarkana.

Nov. 30, 1979.

Rehearing Denied Jan. 15, 1980.

J. R. Cornelius, The Cornelius Law Firm, Tony Hileman, Jefferson, for appellants.

Kenneth L. Ross, Sharp, Ward, Ross & McDaniel, Longview, for appellees.

RAY, Judge.

The original opinion of this Court and the opinion on the original motion for rehearing are withdrawn and the following opinion substituted.

This is a trespass to try title case. Frank R. Moren, Jr. and wife, Polly Moren, appellees (plaintiffs), brought suit against appellants (defendants), City of Jefferson, Texas, Ned A. Ford and Tommy Bradley, seeking a permanent injunction and the title and possession of certain tracts of land within the city limits of Jefferson. Appellants Ford and Bradley filed a cross-action against the Morens in the nature of a trespass to try title action. The City of Jefferson defended on the basis that the streets and alleys in the Moseley and Withee Addition had been dedicated to the public and had not been abandoned by the City of Jefferson even though such streets had never been opened and a portion of the addition had been enclosed by fence by the Morens and their predecessors in title. The case was tried to a jury, and based upon answers to special issues in favor of the Morens, the trial court accordingly entered its judgment awarding appellees a permanent injunction and title and possession of the land. The appellants have perfected their appeals. The City of Jefferson submits two points of error for our consideration and Ford and Bradley submit three points of error.

The judgment of the trial court will be affirmed.

## LIMITATIONS

The Morens relied on the ten year statute of limitations, Articles 5510 and 5511, Tex. Rev.Civ.Stat.Ann., against all appellants, and contended that the streets involved had never been ·dedicated to the public, and alternatively, if the streets had been dedicated, they have since been abandoned such that the statute of limitations would have run against the City of Jefferson to make any further claim to such streets.

This suit was precipitated when the City conveyed the timber rights to the timber standing and growing in the streets to Ford and Bradley. When Ford and Bradley entered upon the property to cut the trees, the Morens filed this trespass to try title suit and asked for an injunction to keep the appellants from removing the timber.

The jury found that the Morens' predecessors in title, Ben Baldwin and wife, Molly Baldwin, had been in peaceable and adverse possession of the 47 acre tract in question, cultivating, using and enjoying the property for ten consecutive years or more prior to the date of the deed from the Baldwins to the Morens on March 31, 1972. The jury further found that the City of Jefferson failed "to accept the proposed dedication of the streets and alleys in the 47

acre tract." Further, in answer to Special Issue No. 3, the jury found that the City of Jefferson had abandoned the streets and alleys in the Moseley and Withee Addition within the 47 acre tract and the 17½ acre tract. In answer to Special Issue No. 4, the jury found that the Baldwins had cultivated and used at least one-tenth of the property within the Moseley and Withee Addition for agricultural purposes for ten or more years prior to April 19, 1974. Based upon these findings, the trial court entered judgment in favor of the Morens and granted the permanent injunction.

■ Appellants Ford and Bradley complain of the description of the 47 acre tract of land in that the field notes in the pleadings describing the land failed to close by some 2,000 varas. While this is an obvious mistake, it is not fatal. It is clear from the evidence that the call, "THENCE S 72 E 272 vrs. the SWC of said Shoemaker Survey," is not accurate in the number of varas. However, we think the call is sufficient to show that the line forming the South boundary line of the 47 acre tract was intended to go to the Southwest Corner of the Shoemaker Survey which would be sufficient for anyone to locate such boundary line. Accordingly, the following calls,

"THENCE S 72 E 272 vrs. the SWC of said Shoemaker Survey;
THENCE N with the West line of said Shoemaker Survey to the Place of Beginning."

are corrected to read as follows:

THENCE S 72 E 272 vrs.;
THENCE to the SWC of said Shoemaker Survey;
THENCE N with the West line of said Shoemaker Survey to the Place of Beginning.

*Howland v. Hough,* 570 S.W.2d 876 (Tex. 1978). There was ample testimony and evidence introduced to indicate that the South boundary line went to the Southwest Corner of the Shoemaker Survey, and the judgment of the trial court will accordingly be modified to conform with the corrected call.

We are of the opinion that Special Issues 1 and 4 of the court's charge related to the ten year statute of limitations were in substantially correct form, and therefore Ford and Bradley's Point of Error No. 2 is overruled. Further, Ford and Bradley failed to submit to the trial court what they deemed to be the correct issues in lieu of the issues actually submitted by the trial court pursuant to the requirements of Tex.R.Civ.P. 273. *Frontier Feedlots, Inc. v. Conklin Bros., Inc.,* 476 S.W.2d 31 (Tex.Civ.App. Amarillo 1971, no writ).

Ford and Bradley assert that their motion for judgment non obstante veredicto should have been granted because the Morens wholly failed to produce sufficient proof to sustain their claim of title. Appellants contend that the growing of trees on the land does not constitute sufficient possession to invoke the ten year statute of limitations.

■ The evidence supporting the jury verdict shows that Molly Baldwin's mother had inherited the property in question from her grandfather in 1900; that the land had been farmed by the Baldwins since 1929 and that some of the land had been planted in pine trees in the early 1940's and that fire lanes had been maintained around the property. A fence totally surrounds the 47 acre tract in question and a gate with the name "Baldwin" was installed and the same has been kept locked. Taxes were paid to the City of Jefferson based upon the 47 acre tract of land. The Baldwins executed lease agreements with sharecropping arrangements and the land was also fertilized and used for pasture in some instances with cattle being raised thereon. The land was in cultivation for the period of time that Molly Baldwin could remember. A barn was built on the property and food was stored in it and hay was put in the barn as were cattle from time to time. The farm was operated during World War II and timber had been sold off the property by the Baldwins and later by the Morens when they took possession. W. K. Freese, a witness, testified that he helped plow and farm the land, bale hay and that Mrs. Baldwin's mother and father had claimed the land by charging admission to see an air show in

1922. Mr. Freese further testified that the land had been farmed by the Baldwins since 1929. The Baldwins stated that more than ten percent of the property was in cultivation and Mr. Freese said that approximately 30 of the 47 acres were in cultivation every year. James Robert Giles testified that he lived next to this property for seventeen years and that the property was cultivated during the entire seventeen year period of time and that various crops were grown on the property such as cotton, corn and peas. Frank Moren testified that the fire lanes had continued to be maintained and that the cultivation of the trees had been continued after he purchased the property in 1972. The property had been posted. Mr. Moren testified that the trees were set out as distinguished from natural growth and that they were planted in rows. A. C. Myers, city commissioner, testified that Mrs. Baldwin's father (Mr. Webb) and the Baldwins had farmed the property in question and had cultivated all of the 47 acres of land. Morris Duncan, city commissioner, testified that the property was in cultivation and that the Baldwins used the farm until it was sold. Mayor Milton Jones testified that for as long as he had been in Jefferson he knew the land in question was owned and claimed by the Baldwins. Morris Jackson, who testified on behalf of the City of Jefferson, stated that he had cultivated and plowed the Baldwins' 47 acres and planted corn and peas thereon. Appellant Ford testified that in order to get into the 47 acre tract of land he had to cut a fence or go through a locked gate. Appellant Bradley testified that he had no claim to any portion of the property other than that to which he had a record title. Bradley himself testified that the land in question was used as agricultural land. The evidence is uncontradicted that the timber now existing had been planted in rows by the Baldwins around 1947 and that fire lanes were plowed around the property in question and maintained.

The mere planting of trees in rows on a certain tract of land, without more, would not ordinarily constitute the adverse possession contemplated by Article 5510, supra.

The posting of signs designating the owner and operator of a tree farm, periodical cutting and maintaining of fire lanes, thinning of the trees to permit optimum growth, clearing of underbrush at intervals, trimming of the trees periodically, inspection of the timber crop regularly for insect infestation and harvesting operations would all be evidence of adverse possession, and if all of the listed operations were performed, they would likely establish possession and use of the land such that it could be concluded that the record owner had notice of a hostile claim. While all of these elements were not present in the instant case, there were sufficient elements when taken in combination with other uses of the property, such that the jury could have rightfully concluded that the Baldwins had made such continuous use of the land as would put the record owner on notice that the Baldwins were making a hostile claim. Many of those testifying in this case knew this land as the "Baldwin Tract" of land and apparently it was so regarded generally in the community. We have concluded that the evidence of the long and uninterrupted use of the land by the Baldwins was such evidence as would support the jury verdict and the trial court's judgment that the Morens had acquired title to the land pursuant to the ten year statute of limitations, Article 5510, supra.

## DEDICATION OF STREETS

The City of Jefferson's defense to the claim of the Morens was that because certain lots in the Moseley and Whithee Addition had been acquired in reference to the recorded plat of the Addition, that such constituted an acceptance of the designated streets and alleys on behalf of the public and in favor of the City of Jefferson and thus such streets and alleys belonged to the City. It was further contended that such streets and alleys had not been abandoned by the City. Both issues were answered by the jury unfavorably to the City.

Once the Morens had made out a prima facie case of limitation title, the City

had the burden to plead, prove and obtain favorable jury findings on its defense of the dedication of the streets to the public. The City did not sustain its burden of proof.

The elements of dedication are as follows:

1. Intention to dedicate.
2. Manifestation and communication of intention to dedicate.
3. Acceptance of the dedication.

Dedication is the setting apart of land by the owner for some public use, and actually or impliedly accepted for that use by or on behalf of the public. 19 Tex.Jur.2d Dedication § 1, p. 178, et seq.

As stated in *Aransas County v. Reif,* 532 S.W.2d 131, 134 (Tex.Civ.App. Corpus Christi 1975, writ ref'd n. r. e.),

"It is well settled that irrespective of how the dedication is made, in order to constitute a valid dedication, it is essential that the owner of the land should intend to devote the land in question to the use and benefit of the public, which intention must be clearly manifested. *Owens v. Hockett,* 151 Tex. 503, 251 S.W.2d 957 (1952). A dedication of private property to a public use is never presumed, but must be established by a declaration or act which evinces a clear and unequivocal intention on the part of the owner to presently set aside and appropriate a certain part of his land for use by the public. . . . "

The court further stated:

" . . . The question of whether or not a roadway has been dedicated to use by the public is one of fact to be decided by the trier of facts. *O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878 (1960); *Dowlen v. Klapper,* 381 S.W.2d 123 (Tex. Civ.App. Amarillo 1964, no writ)."

The court in *Aransas County,* supra, in discussing recorded maps or plats, stated:

"The recording of a map or plat which shows streets or roadways thereon, without more, does not constitute a dedication, as a matter of law, of such streets as public roadways. *County of Calhoun v. Wilson,* 425 S.W.2d 846 (Tex.Civ.App. Corpus Christi 1968, writ ref'd n. r. e.) "Where the plat or map simply uses the word 'street' thereon, and there is no express dedicatory language on the face of the map or plat that such streets are to be devoted to public use, a person who claims that a street shown thereon has been dedicated to use by the public must show some act by the owner of the land that he clearly intended to so dedicate the land in question, and that there has been an acceptance thereof by the public, or by the local authorities. . . . "

In the instant case, the map of the Moseley and Withee Addition was filed with the county clerk on February 15, 1872, but it did not contain any dedicatory language on the plat. The map was apparently filed of record as a result of a partition suit between Withee and Moseley in the District Court of Marion County, Texas, in which the court had appointed commissioners to partition land in the Caldwell Survey between Withee and Moseley. On the face of the map it is stated that "Broken lines represent the boundaries of the original tract and the lines of partition. Each parcel or block is represented by numbers and colors, so that the red denotes the blocks appropriated to Moseley, the light color, those which are appropriated to Withee, . . . " And then it sets out in writing the blocks by numbers appropriated to Withee and the blocks appropriated to Moseley.

There is no evidence in the record that Moseley or Withee or both had any intention to dedicate the streets shown on the plat to the public. Further, there is no showing by the City of Jefferson that Moseley and/or Withee ever manifested an intent, as owners of the land, to dedicate, either expressly or impliedly, the streets and alleys to the City of Jefferson or the public. The failure to plead and prove the intent to dedicate and the manifestation of that intent by the owners of the land and secure favorable jury findings was fatal to the City's defense. The City sought to show an acceptance of what it presumed to

be a dedication of the streets and alleys in the Moseley and Withee Addition, but there can be no acceptance of that which was never intended to be dedicated. Intention is the very essence of creating or transferring an interest in the land for public use. Without it there is no tender of dedication that the public can accept. *City of Houston v. Cyrus W. Scott Manufacturing Co.*, 45 S.W.2d 270 (Tex.Civ.App. El Paso 1932, writ ref'd).

The appellant, City of Jefferson, relies heavily on *Adams v. Rowles*, 149 Tex. 52, 228 S.W.2d 849 (1950), and *Joseph v. City of Austin*, 101 S.W. 381 (Tex.Civ.App. Austin 1936, writ ref'd). Both cases are distinguishable from the instant case. In *Adams v. Rowles*, supra, the roads were platted and dedicated. The key issue and point of error was whether or not the dedicatory plat filed by the Fort Stockton Irrigated Land Company had been accepted by Pecos County. The dedicatory certificate on the plat stated "the Fort Stockton Irrigated Land Company (is) the proprietor of the above described and platted lands." This plat subdivided various sections of land into tracts of approximately ten acres each, and running east and west there were shown roads platted and dedicated so that there was a road between every other tract. Adams became the owner of four of these tracts lying north of the 30 foot road shown on the plat and Rowles became the owner of the tracts lying immediately south of such 30 foot road. The deeds of conveyance of each party specifically referred to the plat. The Supreme Court quoted from *Hunter v. Trustees, etc.*, 6 Hill (N.Y.) 407, 411:

> " . . . if one owning land, exhibit a map of it, on which a street is defined, though not as yet opened, and building lots to be sold by him, with references to a front or rear on that street, this operates as an immediate dedication of the street; and the purchasers of lots have a right to have the street thrown open forever. . . . "

This quote was directed toward the primary issue of whether there had been an implied acceptance of the express dedication shown on the plat. It was not directed toward answering a question of whether there was an intent to dedicate the streets because there was an express dedication shown on the plat by a dedicatory certificate, such that no issue of intention to dedicate was presented. The supreme court held the *dedication* to be effective and irrevocable.

In *Joseph*, supra, the street had been "dedicated by an addition," and lots were sold with reference to the street. The court there stated:

> "Where, as in the instant case, the street has been dedicated by an addition, and lots are sold with reference to the street, the city takes possession of the same as representative of the public, and by such map and plat and deeds conveying lots with reference to a street, the entire strip is 'vested in the public and in the city the right to use it as a street, and the city had the right to take possession of and use said street whenever the progress of the town should make it necessary.' . . . "

■ In both *Adams* and *Joseph*, supra, it was proved there had been a prior expressed dedication by the owner of the property in question. In this appeal, there is no evidence that the owner or owners of the land, at the time the original map of the Moseley and Withee Addition was filed, had an intent to dedicate the streets shown on the map to use by the public. The holding in *Aransas County v. Reif*, supra, is that the political subdivision claiming the streets and alleys must prove, absent an expressed dedication, that the owner of the land intended to devote the land to the use and benefit of the public and that such intention was clearly manifested. The instant case is governed by the holding in *Aransas County*, supra, and not by the holdings in *Adams* and *Joseph*, supra, because the primary issue in the instant case, as it was in *Aransas County*, is whether there was ever an intention to dedicate the streets to the public and in *Adams* and *Joseph*, supra, the issue was whether or not there had been an implied acceptance of an expressed dedication. The

element of acceptance in the present case could not be reached because there was no initial determination that Moseley and/or Withee intended to dedicate the streets to the public nor was there any proof that Moseley and Withee manifested or communicated an intention to dedicate the streets to the public. Since no issues related to intent and manifestation of intent were requested by the City, then such elements were waived for jury determination and deemed submitted to the court for its decision. No request was made by the City for findings of fact and conclusions of law on these two elements of its defense. It is thus presumed on appeal that the trial court found such elements in favor of appellees and in support of its judgment. Rule 279, Tex.R.Civ.P.; *Transport Insurance Company v. Mabra*, 487 S.W.2d 704 (Tex.1972).

The rule is now well established that a vendee who purchases a lot with reference to a map or plat showing an abutting street acquires a private easement in such street regardless of whether it had even been opened or dedicated to the public. The vendee by virtue of the private easement has the right to keep the street open and to make reasonable use thereof. The vendor is estopped from making an inconsistent use of the land when he has sold lots in reference to a map or plat showing streets and alleys. However, without more, designation of streets and alleys on a map or plat would not amount to a dedication of such ways to the public. There are many subdivisions in which the streets are owned and maintained by the owners of the subdivision such that the roads and streets are for the private use of the owners of the lots in the subdivision. There may be only one entrance to the subdivision and it may have a guard at the gate such that the roads and streets are not for general public use. As between those owners of lots in the subdivision and the vendor of the lots, the lot owners can require the streets to remain open if they bought their lots relying upon the availability of the streets for ingress and egress, but such would not constitute a dedication of those roads and streets to a city, county or the public generally where there was no intention or manifestation of an intention to dedicate the roads and streets to a political subdivision of the state or to the public generally. *Barron v. Phillips*, 544 S.W.2d 752 (Tex.Civ.App. Texarkana 1976, no writ).

In the instant case, there was no proof offered by the City which would have shown that Moseley or Withee either expressly or impliedly intended to dedicate the streets and alleys to the public.

There was evidence from which the jury could have concluded that even if there had been an intent to dedicate the streets and alleys to the public that such proposed dedication had never been accepted. Dan Lester, Mayor of the City of Jefferson for more than twenty-two years, testified that the City had never officially accepted the streets in the Moseley and Withee Addition for the benefit of the City or the public. The plat of the addition had been filed for more than one hundred years but there was no evidence that the City of Jefferson had ever attempted to claim the streets within the addition covered by the plat and the evidence was overwhelming that the city never had any intention of putting any streets on the 47 acre tract of land. Since there was no proof offered which would sustain a dedication of the streets to the City, then Special Issue No. 3 relative to abandonment of the streets, became immaterial. If the streets were never dedicated to the City, then the City could not abandon that which it had never received by dedication and acceptance.

Appellants' points of error are overruled. The judgment of the trial court is modified to correct the call in the description of the 47 acre tract relative to the South boundary line of such tract, and as modified, the judgment of the trial court is affirmed.

CORNELIUS, C. J., not participating.