## SPRADLEY v. HALL.

### No. 2275.

Court of Civil Appeals of Texas. Beaumont. Dec. 7, 1932.

Rehearing Denied Dec. 14, 1932.

Adams & McAlister, of Nacogdoches, for appellant.

Hodges & Greve, of Nacogdoches, for appellee.

O'QUINN, J.

This is a suit by appellee to compel appellant to open up and refrain from closing a certain portion of a community road which appellee alleges appellant has closed by erecting across said road a wire fence. It is alleged that about 300 feet of the road are obstructed. Appellee alleged that he was the owner of, and since September, 1915, has owned, 65 acres of land situated to the north of what is known as the "San Antonio road," now highway No. 21; that at the time he purchased his land, and for many years prior thereto, there was a road leading from and by his farm southward to said San Antonio road, which was the only way of ingress and egress to his farm, and to the post office, mill, and gin, community graveyard, school house in his community and to the public markets; that said road (community) ran northwesterly from the San Antonio road by his farm and residence through a thickly settled community, and which road had been used continuously by him, his tenants, and the community generally for a period of more than ten years, in fact more than fifty years, which use gave him and the community at large an easement and prescriptive right to the use of said road, describing same by metes and bounds. It is generally alleged that the road sought to be opened was 24 feet wide, 12 feet off of each side of the adjoining landowners along the course of the road, and generally followed the lines between adjoining tracts, south to the San Antonio road. It is alleged that appellee's land lay to the north of appellant's land, adjoining, the road being on the west side of their said tracts, and that appellant had extended his fence to the west across said road at his north and south lines touching said road, thus closing the road and preventing appellee and people of the community from using said road. Appellee had allegations of damages which it is not necessary to state, nor shall we discuss them.

Appellant answered by general demurrer,

special exceptions, general denial, and specially denied that appellant had an easement in or to the road as by him claimed, but that, if any such easement ever existed, it had long been abandoned by appellee and the general public by reason of which appellee nor the general public could be heard to assert any right in or to the use of said road.

Appellant further specially answered, admitting that, at a time not definitely known to him, there was a road running from highway No. 21 (San Antonio road) north, as described by appellee, for a distance of some 6 miles to the Lone Star road of a width of 8 or 10 feet used by the public, but that said road had not been used for fifteen years, but, if said road had not in fact been abandoned, "then there is now the same road bed as is particularly described running from Highway No. 21 north through the defendant's land as was originally used by the public generally going north from Highway No. 21 and that the defendant has not in any wise molested said original road as was originally laid out, if the same has not been abandoned, but that the said right-of-way, easement and rights as granted exist as was originally had, save and except someone other than defendant has run a wire fence from his west fence directly east of the old roadbed to the east boundary lines of lands owned by S. B. and R. H. Hayter, and has blockaded, stopped and cut off the use of said road that was formerly used by those that formerly traveled north from the San Antonio road to plaintiff's land and that defendant had nothing whatever to do with the stretching, maintaining and fencing of said road as it now exists, but that by the acts of those who built and maintained said fence, as aforesaid, from defendant's fence to Hayter's fence, stopped up and closed said road that was formerly used by those residing north of Highway No. 21 to the south boundary line of 17 acres, a part of the Santiago Rabia Survey, and that if this wire fence be removed, that the road as claimed as needed by plaintiff would be accessible to plaintiff's use and any other person desiring to go as far north as to plaintiff's land, and that the road is open to the north boundary line of defendant's land if said wire fence be removed, and that no act on the part of the defendant in moving his fence molested or changed the original road as laid out and established and used until 1930, as is mentioned hereinafter."

He further answered and alleged that appellee had abandoned his premises and not used same for five years, and "the abandonment of said premises and the road that leads to same has given to the defendant the right to stop said road if he so desired, but which he has not done, but that only has he put his fence further west where it was originally when the road was first used and that the only change in said road that has been had is that the defendant, some ten years ago, gave to and allowed as a temporary use the public residing north of Highway 21 the right to swing the road east onto defendant's land some 25 feet in order that a bridge might be built below the junction of the two branches that was in the main road immediately east of where the temporary bridge was built, and that at the time of granting the right to build the bridge further east on defendant's land it was especially understood and agreed that it was done for temporary relief and until the defendant desired to run his fence on the east side of the road straight, and that he did straighten his west fence, and that in straightening the same canceled the temporary permission and placed his fence so as to put the road back to where it was originally from Highway 21 to the north bank of Bayou Botija, and that in allowing this, it was to aid those north of Highway 21 in getting in and out from the north, in that the bridges and ford on Bayous Little Judge and Botija were washed away and made inaccessible and the road was swung east only temporarily, and that it was to be moved back and placed where it originally was before permission was given to drop down and build a bridge on defendant's land until such time as the original road could be used, and that in the building of the defendant's fence straight, the road is where it has always been to the north bank of Bayou Botija and this is within 35 yards of the north boundary line of the defendant's 160 acre tract, through which said road runs."

He further answered "that all of said road as was formerly used by plaintiff and those living north of Highway 21 runs over, across and on defendant's land from Highway 21 to 35 yards north of Bayou Botija and is not on lands of anyone else, but that the plaintiff has closed up and stopped the road north through his premises and that further on north of plaintiff's premises the road is abandoned, stopped up, and is being cultivated and that by such acts the said road has been abandoned and partly due to the acts and conduct of the plaintiff in blocking and closing said road, but the defendant has at no time closed said road, but at the time of moving his fence westward left a space on his own lands of something like 35 to 40 feet and left the same open to his north boundary line of 160 acre tract and that in doing so the same is on the roadbed of the original road as used to the north bank of Bayou Botija, and that in running from the north bank of said bayou north 35 yards, the defendant left a space of 35 or 40 feet on his land for said road and said ground is as good as was had by the road as originally used after crossing Bayou Botija and going north east 35 yards through defendant's land to the south boundary line of 17 acres of the Santiago Erie and that at no time has this defendant attempted to stop up and close the route except as stated, and that in so stopping it up for the 35 yards, it

was for the interest of the defendant's land and in doing same left as good a roadbed as that formerly had and was only moved westward at the widest part 16 feet, and this was done in order that defendant could make his west fence line straight."

He further answered "that said right of way of the road as once used, if not abandoned, is now open and in the condition it was when originally used to the north bank of Bayou Botija and that Mill Branch and Pearl Branch or Little Judge and Botija are in the same position now to said road as when originally laid out, but not at the time defendant gave temporary use to place a bridge east of the junction of said branches and with the understanding that when the defendant desired to straighten his fence that the road would be where it was always placed and is now on the same roadbed as it was when originally used before abandonment to the north bank of Bayou Botija and that the right-of-way left north of said bayou is as good as that which was used and as near, except the distance of changing the road running N. E. from a point on the north bank of said Bayou Botija to a width of 16 feet over a distance of 35 yards, and that it was moved westward in order to build a straight fence and there is now a way open and all that is needed is to bridge Little Judge and Botija as they were originally bridged."

He further answered "that said road that was originally used and as claimed for now by plaintiff is wholly on defendant's land and 40 feet east of the E. B. line of the Combs Survey and that the right-of-way of said road as originally used was 8 feet and that the defendant now asks that said right-of-way, if not abandoned, be moved westward on his west boundary line of the Neill and that he give 6 feet and that 6 feet be taken off the Combs, as it is unfair for the defendant to have to donate all of the right-of-way through his premises, but that the same should be placed on the line and that the defendant here now tenders to the plaintiff 6 feet off of the west boundary line of the 160 acre tract to be used as a right-of-way for a road if it be desired by plaintiff and those associated with him, as the defendant charges and verily believes that the plaintiff is not desirous of opening up a road, but that he is being encouraged, aided and abetted in a scheme to worry and harass this defendant when in truth and in fact the plaintiff wants no road, as if he does he could secure one from the northeast corner of his land to the Lone Star Road, within 350 or 400 yards of said Lone Star Road and over territory much better and more accessible to his use, in that in the traveling of the right-of-way as now sought to be opened after being abandoned, if it were opened, the plaintiff would have to travel down a very steep hill for 100 yards, bridge two bayous and dig down the dump approaching Highway 21, when if he opened up the road from the northeast corner would have a level roadbed, no bridges to build and into a good, substantial road, and a mile nearer to Nacogdoches than the one he is seeking to have opened, and that the plaintiff is not in good faith seeking to open up said old road that has been abandoned, but is bowing to and catering to others for the purpose of harassing, worrying and annoying defendant, as in the opening up of the road from plaintiff's premises east to the Lone Star Road, would be cheaper, easier and a mile nearer." ·

He further answered "that plaintiff does not seek to open up said road as was originally had and laid out, but seeks to open up only a portion of it, and that the portion he seeks to open is not as accessible as that leading north and that if any has to be opened, then defendant says that that portion of the old road that was formerly traveled from plaintiff's premises north is more accessible to the plaintiff and would be easier maintained, and plaintiff knows this, but in pursuance to a plan to worry and harass defendant, has sought to inconvenience himself by asking that the south end of the road, long abandoned, be opened, and that the plaintiff is not in good faith asking that said road be opened."

He further pleaded "that if it is found that said plaintiff needs the road south, then defendant here now tenders the right-of-way to said road 6 feet off of his land, as may be used by the plaintiff, being 34 feet east of his west fence, but that only in the event that the same is ascertained by the court to be of more advantage to the plaintiff then the right-of-ways east and north from plaintiff's land."

The court overruled appellant's general and special demurrers, and at the close of the evidence instructed the jury to return a verdict in favor of appellee and against the appellant, which they did, and judgment was accordingly entered establishing the right of appellee to the use of the road and commanding appellant to remove the obstructions from the road and to refrain from obstructing same in the future.

The case is before us on appeal.

Appellant contends that the case is one of boundary. We do not think so. Appellee sued for the opening of a road that he alleged appellant had obstructed by erecting wire fences across it. He described the road by metes and bounds, alleged its early establishment in years long gone by, the use of same by the general public and particularly himself and his tenants, and its obstruction by appellant. We have set out rather at length the answer of defendant, appellant, that his contentions, denials, and admissions might be fully understood. It is our opinion that there are but two questions necessary to be determined, namely, first, was the road in question legally established either by dedication

or by prescription? and, second, if so established, has its use been abandoned?

The undisputed evidence shows that, at the time the road was established (some forty or fifty years before the trial of this suit), the vicinity through which it ran was thickly settled, and the owners of adjoining tracts of land agreed to the establishing of the road along the lines of and between their various tracts of land in order that there would be a community road through the settlement south to the San Antonio road (anciently called the King's Highway), now highway 21, which road gave an outlet to the town of Nacogdoches on the east and the village of Douglas on the west, and on to other points. This community road was 24 feet wide, supposed to be half on either side of the dividing lines of the adjoining owners. The owners of land along this road acquiesced in the establishment of the road and its location in the manner stated, and joined with the general public in its use. The road was necessary for the general public, and was by it used to go to the schoolhouse, the cotton gin and mill in the community, the graveyard, and to go to town and to the post office, and over which to convey produce to the markets. This road was so used and was kept up by the community for many years, and was open to the public until it was obstructed by appellant placing a wire fence across it at his north and south ends of his tract in about 1930.

These facts show an easement by dedication. In the language of one of the witnesses: " * * * The neighbors all got together and the fences were set back and the lines drawn, and I don't remember now about surveying it out, but I was there, just a little boy, possibly ten or eleven years old, and was there when we got a team and dragged it out and my father and his boys helped open the road up."

This witness testified that at the time of the trial he was nearly sixty-three years old. It is well settled that dedication may be shown by words and acts of the persons owning the land on and over which the road is established. The acts of the neighbors getting together and setting back their fences along their adjacent lines, thus creating space for the road and grading and making same usable, indisputably shows a dedication of the way, and it is not disputed but that they and the public generally at once accepted the dedication and way and continuously used same for many years—in fact up to the time appellant obstructed same by erecting wire fences across it at the points where his north and south line touched the road, and this suit and the testimony of persons owning lands abutting the road clearly evidences the fact that the road is still desired for public use. We do not understand that appellant disputes or in any way questions the fact that the road was established on the ground and in the manner and for the use as above stated, but contends that the road was to be in fact on and along the dividing lines of the adjoining surveys, and seeks to show that the road was not in fact exactly on the dividing line between him and the owner on his west. Upon this is based his contention that the issue is one of boundary. As before stated, the issue is not one of boundary, but is whether the road was in fact laid out, and its location agreed to by the adjoining land owners, and the road opened, and its use accepted by the public. All these facts appearing without dispute, then the true location of the road, as first established, dedicated, and used, is decisive, for wherever it was located controls. The evidence clearly shows the original roadbed now as when opened and during its use. That being true, unless its use has been abandoned, appellant cannot obstruct it.

If it could be said that the roadway was not dedicated by the acts of the landowners, as above stated, then, in any event, the easement was acquired by prescription. The long use (forty to fifty years) of the road by the public, which use was known to the owners of the lands over which it passed, and which use was fully acquiesced in by said owners, established the easement and road by prescription, and appellant could not interfere with such use or obstruct said easement. Money v. Aiken (Tex. Civ. App.) 256 S. W. 641.

We think abandonment is not shown. This suit, together with the testimony of adjoining landowners and persons who have used the road, unmistakably evidences the desire for the continued use of same. But it is insisted that the questions discussed were questions of fact, and should have been submitted to the jury, and the court's refusal to do so was reversible error. That they were questions of fact is true, but, where the evidence is such that but one reasonable conclusion can be drawn from it, then it is for the court to determine. As we have stated, the establishment of the road, its dedication to the use of the public, its acceptance and use by the public, are without dispute, and we think all the evidence goes to show that the road has not been abandoned. So, there being no dispute as to the facts determining the issues, there was no question of fact to be submitted to the jury, for matters without dispute should not be submitted for the jury's finding.

Appellant's pleadings admit, and the evidence shows, that he moved his fence west and across the road, but it is insisted that he did so only to make his fence line straight, and that he did not do so for the purpose of destroying the road or materially obstructing or impeding the use of same, and that there is left sufficient space for the public to travel outside of and around his fence. This is no defense to appellee's suit to open the road as

it existed before. Appellant's answer and the evidence show that he moved his fence west and placed it on his west line—that this closed the road as then laid out and used. The space left by him out of the 24 feet originally composing the road was estimated at from 8 to 12 feet. This had not been cleared or graded. This makes it obvious that the use of the road—the easement—had been and was materially interfered with. This he could not lawfully do. Gillett v. Van Horne (Tex. Civ. App.) 36 S.W.(2d) 305. If it could be said that there was reasonably sufficient space left, which when properly cleared and graded would permit of ordinary travel, still this would be immaterial, for that was not the question upon which a proper determination of the rights of the parties depends. The decisive question is, Was the easement so affected? and, to say the least of it, the undisputed evidence shows 50 per cent. or more of the easement destroyed.

From what we have said it follows that the judgment should be affirmed, and it is so ordered.

Affirmed.