Alicia Emma R. GUTIERREZ, Appellant,

v.

The COUNTY OF ZAPATA, Appellee.

No. 04–95–00720–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 13, 1997.

Luciano Adrian Rodriguez, Zapata, for Appellant.

Peter L. Kilpatrick,Jeffers & Banack Incorporated, Kenneth L. Malone, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, for Appellee.

Before LOPEZ, STONE and ANTONIO G. CANTU[1], JJ.

ANTONIO G. CANTU, Justice (Assigned).

On May 24, 1993, suit was instituted by appellee, County of Zapata ("County") against Alicia Emma Ramos Gutierrez ("Gutierrez"), appellant, to enjoin interference with the public's right of ingress and egress over a portion of an alleged public road known as "Los Lobos Road." Subsequently, the County amended its petition to seek further relief by way of declaration that the alleged portion of the road was a public road as a result of an express or implied dedication by Gutierrez's predecessor in title.

The County alleged that the road was created in 1924 by virtue of a dedication of a rural community road by the adjoining landowners and that it was used continuously by the general public with the unqualified acqui-

escence of the landowners until sometime in the 1950s.

The County further alleged that Gutierrez's predecessor, Crisoforo R. Ramos ("Crisoforo"), rededicated the portion of the road in controversy which traversed his property when he requested the county officials to reroute a portion of the road across his property in a zigzag manner in order to maximize agricultural use of his property.

The County also alleged that, since at least 1953, the road has been used by the general public and maintained and improved by the County by installing cattle guards and road hazard signs. According to the County, the road, which runs directly from U.S. Highway 83 to areas fronting Falcon Lake, allegedly has provided access to public areas, including trailer parks, for decades, and that the road has also provided, for a number of years, ingress and egress to numerous oil and gas operators on adjacent properties fronting the road.

A jury returned a unanimous verdict finding that the road was expressly and impliedly dedicated. The trial court entered its judgment granting declaratory relief, awarding attorney fees and permanently enjoining Gutierrez from blocking the road. Gutierrez has duly perfected her appeal from the judgment entered on the verdict.

In three points of error, Gutierrez alleges trial court error in the court's charge to the jury. In a fourth point of error, she challenges the legal and factual sufficiency of the evidence to support the jury findings. We address the sufficiency challenges first.

Gutierrez alleges that "there is no evidence to support the verdict, or, in the alternative, the evidence is legally and factually insufficient to support the verdict that the road is a public road," and "the verdict is contrary to the great weight and preponderance of the evidence as to be unjust."

### STANDARD OF REVIEW

A complaint that a jury finding is not supported by any evidence requires consideration of only the evidence and its inferences that favor the finding. The finding below

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

must be upheld if any evidence of probative force exists in the record to support it. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Lindner v. Hill,* 691 S.W.2d 590, 592 (Tex.1985); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

▮ A complaint that the evidence is factually insufficient to support the jury finding requires that we consider and weigh all the evidence. We may set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *see Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980).

We will review and weigh the evidence according to these standards.

### FACTS

The evidence established that Gutierrez is the owner of lands traversed by an unpaved road five miles long commonly known as the "Los Lobos Road" but also referred to as the "Old Falcon Road" and "Los Indios Road". The road was established in 1926 as a partition road for the use and benefit of the landowners who were awarded lands under a judicial partition of porciones [2] 14, 15 and 16 in Zapata County.

The road was originally laid out in a straight line from beginning to end and bisected Crisoforo's cultivated lands, or according to some was contemplated as a straight road but never laid out as such, it having been laid out in its present condition.

There is some evidence that during the time of the condemnation of lands by the federal government for the construction of Lake Falcon Reservoir, about 1954, Crisoforo sought a deviation in the original route of the partition road to either move the road from the proposed condemnation or to circumvent an agricultural field owned by him. The road was rerouted either by Crisoforo himself or by the County at his request. The result was a zig zag in the portion of the road running through Crisoforo's land. From the 1950s up to 1981, either Crisoforo or his son, Antonio Ramos (Antonio), owned all the land underlying the zig zag portion of the road in controversy. Gutierrez, as daughter of Antonio and granddaughter of Crisoforo, is indisputably the owner of the lands containing the zig zag portion of the road in controversy.

During the period between 1954 and 1981, the County periodically maintained and improved the road, sometimes with the full knowledge of Gutierrez's predecessors and oftentimes at their request. Besides installing cattle guards and road hazard signs, the County built several bridges and installed speed bumps and occasionally graded the road. The road was never gated or closed off at any point by any of the landowners nor by Gutierrez's predecessors. The public, in general, traveled along the route of the road without objection by anyone and without securing anyone's permission. At times the road was delineated by fencing on both sides along various portions of the road. Telephone lines were erected which tracked the road giving the appearance of a normal public road. Power lines and water lines belonging to the Falcon Rural Water Supply were erected and still exist along the roadway.

During the 1950s and thereafter through 1981, the road became heavily trafficked by persons in the oil and gas, ranching and fishing industries. A school bus route was established over the road at one time and the sheriff's office occasionally patrolled the road.

During the 1960s, a trailer park and fishing camp opened up at the terminus of the road fronting Falcon Lake that seasonably attracted numerous "snow birds" who spent the winter as temporary residents of the area. These visitors increased traffic considerably and required the County to remove previously installed speed bumps to avoid damaging the ever-increasing number of recreational vehicles and trailers. Cabins were also erected fronting the lake which catered to fishermen.

---

**2.** In Spanish law, a part or portion; a lot or parcel; an allotment of land. *See* BLACK'S LAW DICTIONARY (5th Ed.1979).

The inundation of the old town of Falcon by the construction of the Falcon Lake Reservoir created an attraction that periodically brought tourists and visitors to the area, as well as former residents of the old town, to view the exposed ruins of the townsite and to reminisce during periods of drought, when the old town was temporarily exposed. Because the road originally led into the town of Old Falcon, the road was a natural route for such purpose.

In short, the road was continuously used, at will, by oil field and ranch workers, fishermen, tourists, sightseers, strangers, trailer park patrons, visitors, residents, school buses, public utilities, the fire department and sheriff's department, county maintenance vehicles, and the highway department.

David Morales, a former county commissioner in whose precinct the road is located, testified that he lived in the area all his life (55 years), and that he had served as a commissioner from 1980 through 1994 and as an appointed county judge in 1994. He recalled using the road during the 1950s to gain access to Falcon Lake and to deliver oil field equipment in his line of business. He remembered heavy traffic on the road during the 1960s as a result of the oil and gas industry and the fishing industry. The road has been maintained by the county since he took office.

James Wolfe, who has lived at the terminus of Los Lobos Road[3] since 1962, operated his trailer park and fishing camp business on his property since 1968. He purchased the property at a government auction following the creation of the reservoir with a representation by the government auctioneer that it was accessible by a public road identified at trial as the road in controversy on a map received by him. He recalled inquiring of the County about maintenance of the road

and being told that, although the road was not a county road[4], it was being maintained by the County. He recalled being fined once by the County for removing a speed bump on the road because it was a deterrent to his business and out of concern for his tenants' trailers and recreational vehicles. Wolfe rents trailer spaces by the day, the week, the month, and the year. He has had tenants who have remained residents of his park for twenty years.[5] Throughout the years he has noticed school buses moving up and down the road, as well as county maintenance equipment.

Wolfe remembered meeting Crisoforo and conversing with him in sign language because neither spoke the other's language. He recalled Crisoforo being extremely friendly, who often times helped motorists who had run off the road by pulling them free with his tractors. Wolfe also knew Antonio and attended several parties at his house. The status of the road was never discussed with either Crisoforo or Antonio.

Eduardo Yzaguirre, an attorney, testified that his mother owns property fronting the Los Lobos Road and that he has been familiar with the road since the 1950s, when he was a child. Yzaguirre could not remember the road ever being closed to traffic.

John Joseph Madero, an employee of K.C.S. Resources, an oil drilling and production company, testified that his operations were on the Yzaguirre property and that two other companies were operating in the vicinity. Madero explained that his crews worked and lived on the property for two weeks at a time, that the company has been on the Yzaguirre property for two and a half years, and that the operation requires a crew to be on the property at all times. Up until the present controversy, Madero had never expe-

---

**3.** The Los Lobos Road apparently draws its name from the Wolfe family name. The name translates into "the wolves."

Wolfe testified: It's offensive to some people, because they want it to be named after one of the old timer's down there. And that's their privilege if that's what they want, but I had nothing to do with the naming of the road.

**4.** No legal significance can be attached to the fact that the county had never designated the road as a public road or officially accepted it as a road. Neither official adoption nor recognition is necessary in cases of implied dedication. *Dunn v. Deussen*, 268 S.W.2d 266, 269 (Tex.Civ. App.—Fort Worth 1954, writ ref'd n.r.e.).

**5.** The park and camp contained as many as thirty-seven mobile homes and twenty travel trailers at one time.

rienced any hindrance in the use of the road. He expressed concern that an obstruction on the road would pose a serious health problem for injured oil field workers, as well as for production in general. Madero was aware of the road's reputation in the County for being a public road.

Romero Ramirez, the sheriff of Zapata County, testified that he had lived in the area for forty-eight years and was familiar with the road in question as being also called "Old Falcon County Road." Ramirez recalled having conversations with Crisoforo in the 1960s about the Old Falcon Road. According to Ramirez, Crisoforo was active in politics in the Old Falcon community prior to the inundation. At times, he would gather with the community politicians to discuss current community problems. Ramirez recalled a conversation in which Crisoforo commented that the road in controversy was intended to be used by the public to gain access to Old Falcon.

After the inundation, Ramirez recalled Crisoforo indicating that he wanted the public to have access to the lake by way of the road but desired that the roadway be deviated away from his cultivated lands. According to Ramirez, Crisoforo struck a deal with a Lizandro Ramirez, a commissioner at the time, to have the County relocate the road in such a manner as to avoid his cultivated lands, resulting in the current zig zag configuration. Crisoforo's only condition was that the road be open to the public. The County, according to Ramirez, has maintained the road for thirty-four years.

Ramirez served as county commissioner off and on during the 1970s and remembered that the County maintained the road during that time. He also served on the school board of the Zapata Independent School District and remembered school bus routes on the road. As the sheriff, Ramirez was aware of random patrolling by his units on the road leading to the lake. He did not recall either Crisoforo or Antonio ever complaining about the use of the road by the public.

Adolfo Munoz, a sixty-five year old resident of Zapata since 1957, remembered using the road when he was a college student to reach Old Falcon and other communities in the area. Munoz returned to the area as a teacher in Zapata in 1957 and married Gutierrez's aunt, Arabela, in 1961. Arabela still owns land fronting on the Los Lobos Road but she and Adolfo do not live on the property. They limit their contact with the area to occasional visits on weekends.

According to Munoz, upon the death of Crisoforo, his estate was divided up into three parcels, one each to Antonio, Arabela, and their brother Felix. At present, Arabela and Gutierrez own adjacent tracts fronting on the road. Arabela also owns cabins located lakeside which she leases out to fishermen.

Jose Luis Guevara, the county judge, testified that he had used the road since he was a boy of nine to get to the lake and that he has always considered it to be a public road. According to Guevara, access to the lake by way of the road and by Wolfe's boat docks eliminated an otherwise twenty-five mile drive to the state park boat docks.

Guadalupe R. Gutierrez, appellant's husband, testified that he remembered that the portion of the road in controversy was at one time fenced on both sides. He never saw any signs along the road prohibiting traffic, nor did he ever see either Crisoforo or Antonio stop any of the traffic along the road. He agreed that the County had made improvements on the road through the years and had maintained it as well. He admitted erecting a sign at his wife's request, warning all motorists that the road would be closed to all traffic on a date specified. His admitted purpose for the sign was to force the County to put up some speed limit signs and hazard signs, as well as to pressure the oil companies into making improvements on the road.

Guadalupe Gutierrez also admitted erecting gates along the portion of the road running through his wife's property, but insisted that the gates were never closed to traffic. He further recalled hearing his father-in-law, Antonio, make a request to one of the commissioners for maintenance work on the road.

Gutierrez (appellant) was born on the property in 1947 and lived there until 1956 when her family moved to New Falcon. No

one lived on the premises for approximately twenty-five years, although the family would visit the old homestead for short periods. In 1963, her grandfather, Crisoforo, commissioned a survey of the area which identified the road as a county road. She admitted that the County had maintained the road but insisted it was done with her permission and with her father's permission as well. She also admitted that the County had installed cattle guards on the road and that the public, as well as oil and gas company employees, had been using the road at will since before 1981. She acknowledged that a school bus route was in existence on the road for several years and that her father, Antonio, was once a school bus driver on that route.

In 1993, she and her family returned to the ranch house with intentions of living there and about that time placed the notice of closing sign along the road and erected gates. Thereafter, at her insistence, her attorney sent out notices advising of the impending closing of the road and the contemplated required permits. Gutierrez, however, denied ever actually intending to lock the gates.

Benito Medrano, a sixty-three year resident of Falcon, testified that he had lived in Falcon all his life and remembered traveling on the Old Falcon Road as a young boy. He recalled that the road started in Old Falcon and ran the distance to its present terminus. Medrano remembered working on the road when the zig zag was constructed to avoid bisecting farm land. According to Medrano, Crisoforo and Antonio decided where to place the road, and the work was completed by Medrano and Antonio. Medrano, however, admitted he was a county employee at the time he worked on the road. He insisted the road was not a public road, but rather a community road for the area landowners.

Romeo Vela, a resident of Falcon and a cousin of Antonio, owns the land adjacent to Gutierrez. He insisted that the road has always been a community road, not a public road. He, however, admitted seeing a great number of people drive down the road.

Lizandro Ramirez, Jr., an area landowner, testified that he grew up in Old Falcon as a child and later moved to New Falcon when the reservoir was formed and the old town inundated. He acknowledged traveling on the Old Falcon Road many times during his lifetime on his way to Zapata or Roma. He remembered ranchers using it to reach Old Falcon before the inundation. Ramirez described the road as a "community road," but admitted that the general public began to use it between 1954 and 1981.

### EXPRESS AND IMPLIED DEDICATION

Whether a public right of way has been acquired by dedication is generally a question of fact. *Lindner*, 691 S.W.2d at 591; *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978); *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 885 (1960); *Malone v. Whitfield*, 621 S.W.2d 192, 195 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.). The intent of the grantor is also a fact question. *Viscardi*, 576 S.W.2d at 19. Therefore, it was up to the jury as trier of fact to decide the status of the roadway and the intent of the Gutierrez's predecessor, and the burden was upon the County to adduce evidence to persuade the jury.

Dedication may be accomplished by either an express grant or by implication[6]. *Viscardi*, 576 S.W.2d at 19; *Henderson v. Frio County*, 362 S.W.2d 406, 409 (Tex.Civ. App.—San Antonio 1962, no writ). Generally, an express dedication is accomplished by deed or a written document. *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex.App.— Houston [1st Dist.] 1990, no writ). But an express dedication may also be made by oral declaration of the landowner. *See Williams v. Flores*, 295 S.W. 212, 213 (Tex.Civ.App.—

---

**6.** Implied dedication is sometimes referred to as "common law dedication." *Barstow v. State*, 742 S.W.2d 495, 504 (Tex.App.—Austin 1987, writ denied); *Roberts v. Allison*, 836 S.W.2d 185, 189 (Tex.App.—Tyler 1992, writ denied). The theory of implied dedication finds its basis in the doctrine of equitable estoppel. *Dinwiddie v. American Trading and Prod. Corp.*, 373 S.W.2d

867, 869 (Tex.Civ.App.—El Paso 1963, no writ). It has also been referred to as dedication by estoppel. *See Greenway Parks Home Owners Ass'n v. City of Dallas*, 159 Tex. 46, 312 S.W.2d 235, 241 (1958); *Poindexter v. Schaffner*, 162 S.W. 22, 23 (Tex.Civ.App.—Dallas 1913, no writ) (estoppel in pais). *But see Barstow*, 742 S.W.2d at 504 n. 3.

San Antonio 1927, writ dism'd) (dedication confirmed by representations of owner); *Santa Fe Town–Site Co. v. Norvell,* 207 S.W. 960, 961 (Tex.Civ.App.—Beaumont 1918, no writ) (dedication by oral agreement); *Parisa v. City of Dallas,* 83 Tex. 253, 18 S.W. 568, 570 (1892) (dedication by oral contract); *Grace v. Walker,* 95 Tex. 39, 64 S.W. 930, 932 (1901) (oral consent of property owners to donate land for a street is conclusive of dedication); *see also Brown v. Kelley,* 212 S.W.2d 834, 837 (Tex.Civ.App.—Fort Worth 1948, no writ). Implied dedication, on the other hand, requires a clear and unequivocal intention on the part of the landowner to appropriate the land to public use. *O'Connor,* 339 S.W.2d at 882. An acceptance by the public is also necessary. *Maddox v. Maxwell,* 369 S.W.2d 343, 347 (Tex.1963); *City of Tyler v. Smith County,* 151 Tex. 80, 246 S.W.2d 601, 605 (1952).

At the trial on the merits, the County assumed a heavy burden in alleging and proving an implied dedication. Such a finding results in the appropriation of private property for public use without any compensation to the landowner, which appropriation would otherwise be prohibited under article 1, section 17 of the Texas Constitution. Tex. Const. art. 1, § 17; *County of Real v. Hafley,* 873 S.W.2d 725, 728 (Tex.App.—San Antonio 1994, writ denied).

■ Since, by dedication, valuable rights in land pass from the owner, no presumption of an intent to dedicate arises, unless it is clearly shown by his acts and declarations or by a line of conduct, the only reasonable explanation of which is that a dedication was intended. *McMullen v. King,* 584 S.W.2d 706, 708 (Tex.Civ.App.—Corpus Christi 1979,

writ ref'd n.r.e.); *Aransas County v. Reif,* 532 S.W.2d 131, 134 (Tex.Civ.App.—Corpus Christi, 1975, writ ref'd n.r.e.); *Henderson,* 362 S.W.2d at 409; *International & G.N.R.Co. v. Cuneo,* 47 Tex.Civ.App. 622, 108 S.W. 714, 716–17 (1907, writ ref'd) (cited with approval in *Maddox,* 369 S.W.2d at 347).

■ No particular course of action is required of an owner of land who intends to set it apart for public use. *Patterson v. City of Bowie,* 295 S.W.2d 676, 679 (Tex.Civ. App.—Fort Worth 1956, no writ). Thus, a setting apart, or dedication to a public use, to be effectual, need not be by deed; nor need it be evidenced by the use of it having been continued for any particular time. It is enough that there has been some clear, unequivocal act or declaration of the proprietor, evidencing an intention to set it apart for public use, *Hay v. Cunningham,* 77 S.W.2d 1057, 1058 (Tex.Civ.App.—Amarillo 1934, writ dism'd), and that others have acted in reference to and upon the faith of such manifestation of intention. If the act of dedication is unequivocal, it may take place immediately. If there is no such act, it may be evidenced by an uninterrupted use, and that need not be for any particular time. *Ramthun v. Halfman,* 58 Tex. 551, 553 (1883); *Oswald v. Grenet,* 22 Tex. 94, 99 (1858)[7].

■ Direct evidence of any overt act or specific declaration on the part of the owners of land indicating an intention on their part to dedicate land to public use as a roadway is not required. It is sufficient if the intent is properly inferable from the circumstances in evidence. *Harger v. Cason,* 223 S.W.2d at 246; *Owens v. Hockett,* 151 Tex. 503, 251 S.W.2d 957, 958 (1952); *Wilson,* 425 S.W.2d at 852–53. However, the intention to dedi-

---

7. *See e.g., Lindner,* 691 S.W.2d at 592 (93 years); *Las Vegas Pecan and Cattle Co. v. Zavala County,* 682 S.W.2d 254, 257 (Tex.1984) (over 30 years); *Viscardi,* 576 S.W.2d at 19 (over 50 years); *O'Connor,* 339 S.W.2d at 885 (over 68 years); *Owens v. Hockett,* 151 Tex. 503, 251 S.W.2d 957, 958 (1952) (over 8 years); *Fazzino v. Guido,* 836 S.W.2d 271 (Tex.App.—Houston [1st Dist] 1992, writ denied) (over 60 years); *Medina Lake Protection Ass'n v. Bexar–Medina–Atascosa Counties Water Control,* 656 S.W.2d 91, 95 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (45 years); *Malone,* 621 S.W.2d at 195 (26 years); *County of Calhoun v. Wilson,* 425 S.W.2d 846, 852 (Tex.

Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.) (over 60 years); *Henderson,* 362 S.W.2d at 409 (over 68 years); *Smith v. Wilson County,* 356 S.W.2d 221, 221 (Tex.Civ.App.—San Antonio 1962, writ dism'd) (32 years); *Patterson,* 295 S.W.2d at 679 (over 50 years); *Dunn,* 268 S.W.2d at 269 (30 to 44 years); *Harger v. Cason,* 223 S.W.2d 244, 246 (Tex.Civ.App.—Waco 1949, no writ) (50 years); *Spradley v. Hall,* 54 S.W.2d 1054, 1057 (Tex.Civ.App.—Beaumont 1932, writ dism'd) (40 to 50 years); *City of Dublin v. Barrett,* 242 S.W. 535, 535 (Tex.Civ.App.—San Antonio 1922, writ dism'd) (20 years).

cate must be shown by something more than an omission or failure to act or acquiescence on the part of the landowner. *Greenway Parks,* 312 S.W.2d at 241; *Maddox,* 369 S.W.2d at 347. The landowner's donative intention may not be inferred from evidence that shows only that the public used the roadway for a long period of time without protest or dispute by the landowner. *Maddox,* 369 S.W.2d at 347; *Greenway Parks,* 312 S.W.2d at 241; *Barstow,* 742 S.W.2d at 506.

There must be something more than an omission or failure to act or acquiescence on the part of the landowner. However, the something more need not rise to the level of an overt act or an explicit declaration demonstrating a donative intention. It is enough that a donative intention be inferred from evidence showing other factors that suggest such an intention [8] under all of the circumstances surrounding the landowner's acquiescence in the public's use of the roadway. *Barstow,* 742 S.W.2d at 506.

The essential elements of implied dedication are:

(1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use [9];

(2) the landowner was competent to do so [10];

(3) the public relied on these acts and will be served by the dedication [11];

(4) there was an offer and acceptance of the dedication [12].

---

**8.** These other factors may be reflected in numerous ways. *E.g., Lindner,* 691 S.W.2d at 591 (school bus route over road in controversy); *Las Vegas Pecan & Cattle Co.,* 682 S.W.2d at 257 (admission by predecessor in title); *Viscardi,* 576 S.W.2d at 19 (express dedication in deed); *Greenway Parks,* 312 S.W.2d at 241 (expenditure of public funds for maintenance of the roadway); *Owens,* 251 S.W.2d at 959 (landowner segregated his land from roadway by fencing); *Gilder v. City of Brenham,* 67 Tex. 345, 3 S.W. 309, 310 (1887) (admission by owner of land); *Wilson,* 425 S.W.2d at 853 (failure to exercise rights of ownership for 60 years).

**9.** What the landowner actually intended is not an element of implied dedication. Rather, the acts of the landowner are examined to determine whether he induced the belief that he intended to dedicate the road. *Las Vegas Pecan & Cattle Co.,* 682 S.W.2d at 256.

*Lindner,* 691 S.W.2d at 592; *Las Vegas Pecan & Cattle Co., Inc. v. Zavala County,* 682 S.W.2d 254, 256 (Tex. 1984, no writ).

## THE JURY FINDING OF EXPRESS DEDICATION

■ Gutierrez argues that there can be no evidence of an express dedication because no deed or written document of either Crisoforo or Antonio evidencing their intention to create a public road was produced.

There was, however, introduced into evidence of an express dedication because no deed or written document of either Crisoforo or Antonio evidencing their intention to create a public road was produced.

■ There was, however, introduced into evidence a map prepared by the United States government during the condemnation process for the creation of the Falcon Reservoir which identified the Los Lobos Road as a county road. It is true that the preparation and recordation of a map or plat showing streets or roadways does not, standing alone, constitute a dedication as a matter of law. *Reif,* 532 S.W.2d at 134. This is especially true if the map or plat is not attributed to any act of the landowner, for it is elementary that one cannot lose title to his property through the acts or omissions of others. A valid dedication can only be made by the owner in fee. *Dinwiddie v. American Trading & Prod. Corp.,* 373 S.W.2d 867, 869 (Tex. Civ.App.—El Paso 1963, no writ.)

However, Gutierrez's assertion that the record is completely devoid of evidence of

---

**10.** Held to mean that the dedicator must have fee simple title. *Broussard,* 792 S.W.2d at 537.

**11.** *Malone,* 621 S.W.2d at 195 (longtime uninterrupted use by the public).

**12.** The act of throwing open property to the public use, without any other formality, is sufficient to establish the fact of dedication to the public. *Seaway Co. v. Attorney General,* 375 S.W.2d 923, 936 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). Acceptance does not require a formal or express act. All that is required is a general and customary use by the public. *Viscardi,* 576 S.W.2d at 19; *Davis v. Carriker,* 536 S.W.2d 246, 252 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).

express dedication is not correct because her assertion is premised upon an erroneous contention that express dedication may be effected only by deed or some other written document. As we have noted previously, a dedication is not a conveyance, and, therefore, a writing is not necessary. The owner may accomplish his purpose by any conduct which makes his intention clear. *Patterson,* 295 S.W.2d at 679; *see also Grace,* 64 S.W. at 932; *Norvell,* 207 S.W. at 961; *Williams,* 295 S.W. at 213. The only requirement of an express dedication is the showing of a declaration or some express manifestation of the purpose to devote the land to the public use. *Owens,* 251 S.W.2d at 958; *Henderson,* 362 S.W.2d at 409.

There was evidence available to the jury that Crisoforo had reached an agreement with Zapata County Commissioner, Lizandro Ramirez, to create a zig zag in the road rather than laying it out in a straight line along the path of the partition road in order to avoid bisecting a cultivated field. The only condition for this change in the road was that the road would be open to the public. The County accepted the change on that condition. Although there was conflicting evidence surrounding the circumstances of the zig zag in the road, it was for the jury as fact finders to resolve.

Moreover, Crisoforo, in conversations with community leaders, manifested his intentions that the road was to be open for public use. Although Gutierrez's witnesses had not heard such declarations, no contradicting evidence was offered by Gutierrez. All the evidence indicated that the public used the road since its inception. Even Gutierrez acknowledged that the public had used the road for at least thirty years. We find sufficient probative evidence of express dedication which is not against the great weight and preponderance of all the evidence. The finding is clearly not wrong or unjust.

## THE JURY FINDING OF IMPLIED DEDICATION

### (1)

### *Donative Intent*

Gutierrez asserts that there is no evidence of clear and unequivocal intention to dedicate the road to public use. As we have previously noted, Crisoforo entered into an agreement with the County for a deviation in the road to be made by the County with the only condition being that the road be open to the public. Moreover, Crisoforo and Antonio requested and allowed the County to improve and maintain the road at public expense for a number of years. Zapata County erected bridges, cattle guards, speed bumps, and traffic signs on the road. There is substantial evidence that the road was widely reputed to be public and that the road has always been open to the public since the 1950s.

There is further evidence that Crisoforo commissioned a 1963 survey that identified the road as a "County Road." There is no evidence that he ever disagreed or disapproved of the designation. On the contrary, Crisoforo commissioned the same surveyor to do additional work at a later date. If the facts are sufficient to give rise to the presumption of intent to dedicate, all that is required to complete the dedication is public use of the land. *Viscardi,* 576 S.W.2d at 19.

We hold that there is factually sufficient probative evidence to support a jury finding on donative intent.

### (2)

### *Legal Capacity*

Gutierrez argues that neither she nor any of her predecessors had fee title to the property in controversy because the entire road (as opposed to the zig zag portion of the road) was created by a partition requiring the various landowners to contribute land for the construction of the road. Gutierrez claims that she and her predecessors are mere co-tenants along with other landowners and that a dedication is only possible with the joinder of all the landowners.

Gutierrez's position is patently without merit. She has, throughout the procedural history of this case, admitted that she and her predecessors have always been the fee owners of the portion of the road in dispute. In fact, the entire zig zag portion of the road is located on land owned by Gutierrez, ac-

cording to her testimony, and in response to requests for admission. Ownership of the property in controversy has never been in issue. We overrule this contention.

### (3)
### *Public Need or Public Use*

 Gutierrez contends that the record contains no evidence of a public need or a public use of the road over her property because the road does not lead to a public place. She argues that the record merely shows that a selected group of persons, and not the public in general, needs and uses this road.

The record belies Gutierrez's contention. Public use of the road is virtually undisputed. Gutierrez herself acknowledged that the public has used the road for the last thirty years. Every witness Gutierrez called acknowledged that the public used the road.

Those using the road include oil field and ranch workers, fishermen, tourists, sightseers, other strangers, Wolfe's patrons, visitors, school buses, public utilities, the fire department, the sheriff's department, and the highway department. This use has always been at will, without objection or interruptions by Crisoforo or Antonio, and in fact with their blessing.

The record further reflects that the road is essential for fire, police, and other emergency services to the area. It is essential for school bus service as well. Public use and need of the part of Los Lobos Road at issue is overwhelmingly demonstrated by the record.

It is undisputed that the road leads to Falcon Lake, a public place. The road provides the closest access to Falcon Dam, eliminating a drive of 25 additional miles otherwise. Moreover, the road provides access to Wolfe's camp which provides accommodations and recreation facilities to the public.

 A public road does not depend upon its length, nor upon the places to which it leads, nor upon the number of persons who actually travel upon it. *McCloskey v. Heinen,* 266 S.W. 193, 195 (Tex.Civ.App.—San Antonio 1924, writ dism'd w.o.j.); *City of Dublin v. Barrett,* 242 S.W. 535, 535 (Tex.

Civ.App.—San Antonio 1922, writ dism'd). In fact, proof that a road is only slightly traveled by the public does not prove the road is not a public road. *Rowan v. Pickett,* 237 S.W.2d 734, 739 (Tex.Civ.App.—San Antonio 1951, no writ). If it is free and open to all who have occasion to use it, it is a public road. *McCloskey,* 266 S.W. at 195; *Barrett,* 242 S.W. at 535.

We find overwhelming evidence of public reliance and use of the road by the public. The evidence is both legally and factually sufficient to support the jury finding on this element of implied dedication.

### (4)
### *Public Acceptance of the Dedicated Road*

 Gutierrez contends that if there is no public need or public use of the road available to the general public, there can be no public acceptance of the roadway because there is simply no public there to accept it. This proposition, as we have seen, operates under an erroneous premise because the record clearly establishes an overwhelming need and use by the general public for over thirty years.

Alternatively, Gutierrez says that evidence of public use, without objection by the landowners, cannot form the basis of an implied dedication. *See Maddox,* 369 S.W.2d at 347; *Barstow,* 742 S.W.2d at 506. She recognizes, however, that under certain circumstances, public use when coupled with other facts, may raise an inference of intent to dedicate; but she insists that there are no "other facts" in the record that support a finding of dedication. We disagree. As we have already enumerated, there are numerous factors present in the evidence that in the aggregate clearly support a finding of public acceptance. Moreover, public use of land is not only evidence of the intention of the owner to dedicate the land to public use, it also constitutes strong evidence of the acceptance of a tendered dedication.

 It is of no import that the County never designated the road as a public road or officially accepted it as a public road. *Medina Lake Protection Ass'n v. Bexar-*

*Medina–Atascosa Counties Water Control,* 656 S.W.2d 91, 95 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Acceptance does not require a formal or express act. That is, neither official adoption or recognition is necessary in cases of implied dedication. By general and customary use, the public can accept a dedication. *Moody v. White,* 593 S.W.2d 372, 379 (Tex.Civ.App.—Corpus Christi 1979, no writ). So then, acceptance can be implied from the conduct of the public. *Viscardi,* 576 S.W.2d at 19; *Gilder v. City of Brenham,* 67 Tex. 345, 3 S.W. 309, 310 (1887). Acceptance may, therefore, be shown circumstantially.

There is ample evidence to meet both a legal and factual sufficiency challenge to the jury's findings on all of the elements of implied dedication. Accordingly, Gutierrez's point of error four is overruled.

### (5)
### The Jury Charge

■ In point of error number one, Gutierrez alleges trial court error in failing to instruct the jury as to the four essential elements of proof required to establish a road by implied dedication.

The trial court instructed the jury on implied dedication as follows:

Do you find that Crisoforo or Antonio Ramos impliedly dedicated the Subject Road for public use before 1981?

You are instructed that the following three elements must be present to constitute an implied dedication for public use:

1) the acts or inaction of Crisoforo or Antonio Ramos induced the belief that they intended to dedicate the Subject Road for public use;

2) the public relied on these acts and have been served by the dedication; and

3) there was an offer and acceptance of the dedication by the public, although no formal, written, or official offer and acceptance is required.

Gutierrez claims that the trial court's failure to charge on a fourth element constitutes

reversible error. She seems to be contending that the jury was required to find that her predecessors had the legal capacity to dedicate.[13] The argument appears to be that her predecessors in title were only co-partitioners and, therefore, co-tenants of the entire road, as a result of each landowner contributing land to construct the community road at its inception.

At the charge conference, counsel for Gutierrez lodged the following oral objection:

Implied dedication cannot be in writing or in a document. They must be orally or by conduct or by other—as the law defines the four elements of the implied dedication.

The law is very clear, Your Honor, as to what an implied dedication is. And this charge and this question submitted to the jury does not adequately and properly represent the law of the State of Texas.

In addition, Gutierrez filed the following written objection:

Furthermore, Defendant objects to the Court's charge, and its jury questions and jury instructions, in that such charge does not instruct the jury as to the applicable law dealing with roads used in common with co-tenants and co-partitioners, and such instructions and questions will confuse the jury as to the law applicable to these co-owner situations as opposed to a single-owner sole proprietor situations [sic]. The court's charge fails to instruct the jury that Defendant is not a sole owner of the road subject to this litigation.

Finally, Gutierrez submitted the following requested instructions:

Defendant's Requested Instruction No. 5:

The elements of implied dedication are (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication.

Defendant's Requested Instruction No. 6

---

**13.** The County has interpreted this contention to raise an issue of mental capacity, but we do not read the contention in that manner. Mental capacity was never an issue at trial. If it is intended to be made an issue now, the matter has not been preserved for review.

You are instructed that the person making the dedication must have the ability to do so; he must have fee simple title before he can dedicate his property.

It is clear that the oral objection does not, with any specificity, point out claimed infirmities. Although it vaguely apprises the trial court that there are four elements that are necessary to establish an implied dedication, it does not identify the missing element. Moreover, the written objection is even less helpful in pointing out the infirmity now claimed on appeal. Only the requested instruction generally points out the nature of the complaint now before this court.

The record reflects that Gutierrez's requested charge with instructions was filed with the clerk of the court on the first day of trial, while the charge conference occurred on the third day of trial. At the conference, counsel for Gutierrez requested specific instructions which were read into the record. None of these address the matter now complained about. Then counsel requested that the trial court consider his previously filed twelve requested instructions en masse.[14]

Rule 274, TEX.R. CIV. P. in pertinent part provides:

A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections ...

The rule is intended to afford trial courts an opportunity to correct errors in the charge by requiring objections to clearly designate the error and to explain the grounds for complaint. *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987); *Edwards v. Hammerly Oaks, Inc.,* 908 S.W.2d 270, 274 (Tex.App.—Houston [1st Dist.] 1995, writ filed).

■ If an instruction is given, but omits one of several necessary elements, it is a defective instruction, and the defect may properly be called to the trial court's attention by objection without requesting in writing a revised instruction including the omitted element. *Johnson v. Johnson,* 869 S.W.2d 490, 492 (Tex.App.—Eastland 1993, writ denied); *Sutter v. Hendricks,* 575 S.W.2d 308, 310 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). But the tender of a correct issue [instruction] alone will not preserve error.

Gutierrez did not refer to any specific jury question or instruction in any of her objections. Moreover, the only written objections to the charge were those filed before the trial began and, therefore, could not and did not raise any relevant objections.

Although Gutierrez's requested instruction number five is essentially a correct instruction, it was never specifically brought to the court's attention other than en masse. However, in the instant case, the question was one relied upon by the County, not by Gutierrez. Therefore, Gutierrez was not required to submit the omitted instruction in substantially correct form. TEX.R. CIV. P. 278.[15]

14. MR. RODRIGUEZ: Yes, Your Honor. In addition, we have request No. 1 through 12, I believe, Your Honor.

THE COURT: Yeah. For the record, the Court will go ahead and deny the requested instructions in your special instructions requested in your written document and deny the defendant's objections to the Court's charge.

MR. RODRIGUEZ: All right. Specifically as to each one, the court has denied?

THE COURT: Exactly.

MR. RODRIGUEZ: Thank you, Your Honor. Note our exception, and that's all we have, Your Honor.

Requested issues and instructions submitted en masse will not be considered by the trial court and result in waiver. *Demler v. Demler,* 836 S.W.2d 696, 698 (Tex.App.—Dallas 1992, no writ); *Crisp v. Southwest Bancshares Leasing Co.,*

586 S.W.2d 610, 616 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Swinney v. Winters,* 532 S.W.2d 396, 404 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

15. Rule 278, in pertinent part, provides:

Rule 278. Submission of Questions, Definitions, and Instructions

The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence....

\* \* \* \* \* \*

Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of

▮ Rule 278 requires only an objection to the trial court's failure to submit a question [instruction] on which Gutierrez did not have the burden of proof. *See F.D.I.C. v. F. & A. Equipment Leasing*, 854 S.W.2d 681, 690 (Tex.App.—Dallas 1993, no writ). However, we hold that neither of Gutierrez's objections sufficiently notified the trial court of the claimed defect. Moreover, Gutierrez's theory on appeal does not comport with the claimed error as evidenced by her requested instruction. If no objection was made to an issue upon the ground now urged on appeal, the complaint was waived. *Stewart v. Fitts*, 604 S.W.2d 371, 374 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.); *Crisp*, 586 S.W.2d at 616.

Additionally, the question of ownership was never in issue. It is undisputed that from the 1950s to 1981, Crisoforo or Antonio owned the property in question. Thus, at all relevant times, the portion of the road in controversy rested on property owned in fee simple by Crisoforo or Antonio. Accordingly, the trial court instructed the jury, without objection, that the "subject road means the road (known by name as the Los Lobos Road) as it 'zig zags' and traverses the land formerly owned by Crisoforo and Antonio Ramos and currently owned by Defendant Emma R. Gutierrez."

There can be no error in the trial court's refusal to submit a requested issue [instruction] if there is no issue raised by the evidence. *Hernandez v. Southern Pac. Transp.*, 641 S.W.2d 947, 953 (Tex.App.—Corpus Christi 1982, no writ). Point of error number one is overruled.

▮ In point of error number two, Gutierrez complains of the trial court's alleged failure to correctly charge the jury on the

elements of express dedication of a road to public use.

Question Number one of the court's charge reads: "Do you find that Crisoforo Ramos expressly (orally or in writing) dedicated the subject road for public use at any time before he died?" Gutierrez contends that the question is incorrect, as a matter of law, and that the question confused the jury with regard to express and implied dedications because "the law provides that an express dedication can only take place through a deed or written document." [16]

Gutierrez relies on the language in *Henderson*, 362 S.W.2d at 409, and insists that express dedication can never be accomplished orally. We summarily reject this contention.

In *Henderson* the court stated:

A dedication is never presumed, it must be manifest either by unequivocal acts, or *declaration* of the landowner, dedicating the land to public use. Common law dedication is subdivided into two classes, express and implied. In both it is necessary that there should be an appropriation of land by the owner to public use. In the one case it is shown by some *express manifestation* of his purpose to devote the land to public use; in the other, by some act or course of conduct from which the law will imply such an intent. If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to a public use, then the law will not permit him to assert that there was no intent to dedicate.

362 S.W.2d at 409 (Emphasis added). There is nothing in the *Henderson* opinion limiting a declaration or express manifestation to a writing. To the contrary, our law has long recognized that an express dedication may

the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party. Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.

16. The court also gave the following preliminary instruction without objection:

In Jury Questions No. 1 and 2 herein you are requested to examine whether an equitable interest—not title interest—in the subject road was expressly (orally) or impliedly dedicated for the public use by Defendant's predecessor in title. For a landowner to dedicate a right-of-way to the public, it is not legally required that there be formalities of a written grant, instrument, or deed signed and acknowledged.

also be made by oral declaration of the landowner. *See Grace*, 64 S.W. at 932; *Parisa*, 18 S.W. at 569; *Norvell*, 207 S.W. at 961; *Williams*, 295 S.W. at 213; *Spradley*, 54 S.W.2d at 1057; *Brown*, 212 S.W.2d at 837 (cited with approval in *Owens*, 251 S.W.2d at 959). *See also* BLACKS LAW DICTIONARY 372 (5th Ed.1979), wherein it is written:

> Express or implied. A dedication may be express, as where the intention to dedicate is expressly manifested by a deed or an explicit oral or written declaration of the owner, or some other explicit manifestation of his purpose to devote the land to the public [sic] use. An implied dedication may be shown by some act or course of conduct on the part of the owner from which a reasonable inference of intent may be drawn, or which is inconsistent with any other theory than that he intended a dedication.

Gutierrez's second point of error is overruled.

■ In point of error number three, Gutierrez alleges that the trial court reversibly erred by refusing to instruct the jury that mere acquiescence on the part of the landowner in allowing public use of a private road is not sufficient for an implied dedication of such road to public use and in failing to instruct the jury that the use of the road by a limited class of persons is not use sufficient to constitute an implied dedication of the road to public use.

Gutierrez requested the following instructions which the court refused to submit:

Defendant's Requested Instruction No. 2:

> You are further instructed that the intention to dedicate must be shown or be inferable by sufficient evidence, from the owner's acts. Intention to dedicate must be shown by something more than an omission or failure to act or acquiescence on the part of the owner.

Defendant's Requested Instruction No. 11:

> You are instructed that if only a certain class of persons use the road, but there was no use of the road by the public in general, that the use of the road only by a certain class of persons is not sufficient, by

itself, to constitute an implied dedication of the road to public use.

■ These two requested instructions are part of the requested instructions submitted by Gutierrez en masse. Requested issues or instructions are required to be submitted separately, and a party who does not follow such procedure and insists on making group requests of a number of such issues cannot complain of the trial court's refusal. *Swinney*, 532 S.W.2d at 404; *Demler*, 836 S.W.2d at 698; *Crisp*, 586 S.W.2d at 616. Moreover, even if Gutierrez had properly brought her requests to the trial court's attention, in matters of jury instructions a trial court has wide discretion in determining which questions and instructions are proper for the jury's consideration. *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 557 (Tex. 1972). This is especially true when the matter involves explanatory instructions as opposed to questions. *Perez v. Weingarten Realty Investors*, 881 S.W.2d 490, 496 (Tex. App.—San Antonio 1994, writ denied); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 825 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). A trial court's refusal to submit a requested instruction will not be overturned on appeal in the absence of abuse of discretion by the trial court. *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 836 (Tex.1986). An abuse of discretion occurs only when the trial court acts without reference to any guiding principles, *Texas Dept. of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990), or when its decision is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Gunn Buick, Inc. v. Rosano*, 907 S.W.2d 628, 632 (Tex.App.—San Antonio 1995, no writ).

Gutierrez has neither alleged abuse of discretion nor pointed to anything in the record which might arguable fall within the orbit of abuse of discretion. The lone assertion that the trial court allowed the jury to be confused as to the law by refusing to include the requested instructions falls way short of showing arbitrary and unreasonable exercise of judicial discretion. We overrule Gutierrez's point of error number three.

In the absence of any trial court error requiring reversal, the judgment of the trial court is affirmed.