TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00390-CV






William R. Scott and Bessie E. Scott, Appellants



v.



Dennis P. Cannon and Katherine Berkley Cannon, Appellees






FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT


NO. 96-0359, HONORABLE JACK ROBISON, JUDGE PRESIDING 






 This is an appeal of a declaratory judgment and a permanent injunction prohibiting the
appellants William R. Scott and Bessie E. Scott (the "Scotts") from using a roadway located on property
owned by appellees Dennis P. Cannon and Katherine Berkley Cannon (the "Cannons"). In nineteen points
of error, the Scotts challenge the sufficiency of the evidence supporting the trial court's conclusions that the
road on the Cannons' property is private and the Scotts have no easement to use it.


BACKGROUND

 The Scotts and Cannons have been neighbors for over thirty years. As seen on the map
below, the only access from Highway 290 to the Scotts' property (denoted on the map as
"RANDERSON-IRELAND-SCOTT" hereinafter the "Scott Tract") is a roadway (hereinafter the "Road")
that crosses two pieces of property owned by the Cannons (denoted on the map as "CH BERKLEY" and
"TINNEY-GARCIA-CANNON," hereinafter the "Berkley Tract" and the "Tinney 






















Tract" respectively). Although there is an existing unpaved access to the Scotts' property from a public
road (denoted on the map as the "Old Road to Pound Property," hereinafter the "Pound Road"), the Road
from Highway 290 has been the main access to the Scott Tract for as long as anyone can remember. (1) It
is undisputed, however, that neither the Cannons nor their predecessors in title ever dedicated or granted
an express easement to use the Road to the Scotts, the Scotts' predecessors in title, or the public. Whether
the Cannons or the Cannons' predecessors in title gave the Scotts or the Scotts' predecessors in title
permission to use the roadway remains disputed.


History of Title

 It is undisputed that the Scotts' property was never purchased from the Cannons or any
of the Cannons' predecessors in title. Rather, the Scott Tract was originally created in 1884 by Dr. Joseph
Pound when he sold 200 acres of his 700 acre tract to N.J. Jones. This 200-acre tract, referred to herein
as the Scott Tract, was later sold to Hattie Randerson. In 1942, Randerson conveyed the tract to Bessie
Scott's father, John Ireland. Finally, in 1957 the Scotts purchased the tract from Ireland and have lived
there since that purchase. As for the remaining Pound property, most of it was dedicated to the City of
Dripping Springs in 1983 and is denoted on the map as the "City Park."

 Immediately south of the Scott Tract are two tracts of land owned by the Cannons. The
Berkley Tract, which immediately adjoins the Scott Tract, has been in Katherine Cannon's family since
1909 when her grandfather, C.H. Berkley, purchased it from P. Leinneweber. Katherine Cannon's father,
Lee Berkley, used the property to run cattle but the record is unclear as to when and how long he actually
lived on the property. (2) Katherine Cannon moved onto the property in 1967 and has lived there ever since. (3)

 Adjoining the Berkley Tract is the second piece of property owned by the Cannons, the
Tinney Tract. The Tinney Tract was first owned by John Tinney. Tinney conveyed his land to a person
known in the record as Dr. Garcia. Garcia and the Berkleys remained neighbors until the Cannons
purchased Dr. Garcia's land in 1966.


THE DISPUTE


 In early 1996, an agent for Sprint Telecommunications approached the Cannons about
permitting Sprint to place a communication tower on their land. The Cannons refused. The Sprint agent
then approached the Scotts. The Scotts granted Sprint permission to place the tower on their land and told
the Sprint agent that Sprint could use the Road to get to its tower. (4) The Cannons, however, told the agent
that the Road was private and that the Scotts did not have the authority to grant permission for its use. The
Cannons informed the agent that they owned the Road and that the Scotts had no easement over their land.

 Shortly thereafter, the Cannons instructed their lawyer to send a letter to the Scotts
terminating permission to use the Road and threatening them with trespass charges if they continued to do
so. The Scotts responded by suing for an injunction and a declaratory judgment to secure and confirm their
right to use the Road. The Scotts alleged that they had a permanent right to use the Road because they
had acquired an easement over the Cannons' property by estoppel, necessity, and/or prescription. The
Cannons counterclaimed seeking a declaratory judgment that the Road was private and requesting a
permanent injunction prohibiting the Scotts from further use of the Road. 

 Following a bench trial, the trial court rendered judgment for the Cannons. The trial court
declared that the Road was private and that the Scotts had no rights of any kind to use the Road. 
Moreover, the trial court permanently enjoined the Scotts from using the Road and held them liable for
$13,000 in attorneys' fees. The Scotts appeal alleging nineteen points of error. These points are grouped
to establish the following contentions: (1) the trial court erred in concluding that the Road was private and
that the Cannons made no implied dedication of a public easement; (2) the trial court erred in concluding
that the Scotts have not acquired an easement by estoppel; (3) the trial court erred in concluding that the
Scotts have not acquired an easement by necessity; (4) the trial court erred in concluding that the Scotts
have not acquired an easement by prescription; and (5) the trial court erred in awarding the Cannons
attorneys' fees. 


DISCUSSION


Public Road vs. Private Road

 As a threshold issue, we must first consider whether the trial court erred in concluding that
the Road is private. The Scotts contend that the evidence presented at trial conclusively proved that the
Road had been dedicated by the Cannons for public use. In support of their contention, they introduced
an affidavit filed and recorded in 1964 ("1964 Affidavit"). Because this affidavit is crucial to the Scotts'
entire appeal, we will address the facts surrounding it in some detail.


1964 Affidavit

 In 1963, the Scotts applied for a home improvement loan with the Federal Land Bank (the
"Bank") for the purpose of remodeling their home. Before the Bank would grant the loan, the Bank
required the Scotts to secure an affidavit stating that the Road to their home was a public road. The Scotts'
attorney contacted two longtime area residents, W.E. McNair and W.P. Crow, and prepared an affidavit
for their signature. McNair and Crow swore that they were familiar with the Road and they stated in
relevant part:


 I feel the public considers this road used as ingress and egress to Mr. Scott's place
as a public thoroughfare, not prohibited for use of the public so desiring to use the road. 
I know the public has for over twenty years used the road as a public road and look upon
the same as no part of the adjoining landowner's property but as being open to them to
come to Mr. William R. Scott's property. 



McNair and Crow signed the affidavit on May 18, 1964. In June 1964, without notice to the Cannons
or their predecessors in title, the 1964 Affidavit was filed and recorded with the Hays County Clerk's
Office. 

 In October 1972, an attorney for the Cannons discovered the 1964 Affidavit by accident. 
It is undisputed that upon discovery of the affidavit, the Cannons through their attorney informed the Scotts
that the Road was not a "public road." The events taking place after that conversation, however, remain
disputed. The Scotts contend that they refused the Cannons' request to remove the 1964 Affidavit from
the public record. The Scotts further contend that they told the Cannons that unless the Cannons would
grant them an express easement, they would take no action to remove the 1964 Affidavit. Because no
express easement was ever presented to them, the Scotts contend that the Road remained open for use
by anyone desiring to visit their property.

 The Cannons, on the other hand, contend that after they informed the Scotts that the Road
was "not public," their attorney told the Scotts to draft an express easement for consideration by the
Cannons. Because no such document was ever presented, the testimony indicates that at that point Mrs.
Cannon believed that it was "a good time to just keep quiet" because use of the Road from thereon would
be construed as permissive.


Easement by Implied Dedication (5)

 "Dedication" is the act of appropriating private land to the public for any general or public
use. Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment
of the public. See 2 George W. Thompson, Commentaries on the Modern Law of Real Property § 369
(1980). (6) In Texas, the doctrine of implied dedication is well established. (7) As stated by the Texas Supreme
Court, a claimant can prove an implied dedication of an easement if it is shown that: (1) the acts of the
landowner induced the belief that the landowner intended to dedicate the road to public use; (2) the
landowner owned the land in fee simple and therefore was competent to dedicate the land; (3) the public
relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the
dedication. See Las Vegas Pecan & Cattle Co. v. Zavala County, 682 S.W.2d 255, 256 (Tex. 1984);
Linder v. Hill, 691 S.W.2d 590, 592 (Tex. 1985); see also Robert Brousseau, Real Property: Purchase,
Sale, Title, and Ownership, 40 Sw. L.J. 301, 318-19 (1986). Whether the claimant has proved these
elements is a question of fact. See Linder, 691 S.W.2d at 591; Malone v. Whitfield, 621 S.W.2d 192,
195 (Tex. Civ. App.--Waco 1981, writ ref'd n.r.e.); Lee v. Uvalde County, 616 S.W.2d 367, 373 (Tex.
Civ. App.--Tyler 1981, no writ); Garza v. Garza, 552 S.W.2d 947, 952 (Tex. Civ. App.--Tyler 1977,
no writ).

 Recently, the San Antonio Court of Appeals articulated an exhaustive analysis of each of
the elements of an easement by implied dedication in Gutierrez v. County of Zapata, 951 S.W.2d 831,
837 (Tex. App.--San Antonio 1997, no writ). In Gutierrez, the County of Zapata sought to enjoin
Gutierrez from interfering with the public's right of ingress and egress over a portion of a road located on
Gutierrez's property. On appeal, the court of appeals upheld the injunction granted by the trial court finding
some evidence to support each element of an implied dedication. Regarding the first element, donative
intent, (8) the court stated that there was a clear and unequivocal intention to dedicate as evidenced by
the following: (1) an agreement entered into between Gutierrez's predecessor in title and the County for
a deviation in the road paid for by the County and conditioned upon that road being public; (2) the fact that
the County improved and maintained the road at the public's expense; (3) the fact that the County erected
bridges, cattle guards, speed bumps and traffic signs on the road; and finally (4) a survey that identified the
road in question as a "County Road." As to the second element, legal capacity, the court stated that
Gutierrez admitted that she and her predecessors in title had always been the fee owners of the portion of
the road in dispute. Therefore, they had the capacity as required by law to dedicate the land. As to the
third element, public need or public use, the court found that the road in question was essential for school
buses to service their routes and for fire, police, and other emergency services to serve the surrounding
area. Finally, with regard to the fourth element, public acceptance of the dedicated road, the court stated
that the circumstantial use by the public as noted in the preceding element constituted evidence of
acceptance of the implied dedication. Acceptance, the court noted, did not require a formal or express
act. See id. at 840-42.

 We find Gutierrez to be instructive in the present case. However, unlike Gutierrez, the
trial court in the present case found from the disputed evidence that the road was private. Therefore, in
order for us to reverse the trial court's finding, the Scotts must demonstrate that the evidence establishes
that the Road was impliedly dedicated as a matter of law. See Holley v. Watts, 629 S.W.2d 694, 696
(Tex. 1982). The Scotts cannot meet such a burden given the facts present in the record.

 First, unlike Gutierrez, neither the Cannons nor any of their predecessors in title asked for
or received any support from public funds to help maintain and repair the Road. In fact, the record is
replete with evidence that the Cannons and Scotts paid for all maintenance and repairs to the Road
themselves. Second, the Scotts' evidence of donative intent was the fact that the public used the road for
a long period of time without protest from the Cannons or the Cannons' predecessors. Such evidence,
however, is insufficient as a matter of law. See Gutierrez, 951 S.W.2d at 839. Third, it is undisputed that
in 1972 the Cannons made it clear to the Scotts that the Road was not a "public road." Finally, unlike
Gutierrez, the Road in the present case was used strictly for ingress and egress to the Cannons' and
Scotts' properties. There was no other public need for use of the Road. Therefore, because neither
donative intent nor public need can be established conclusively, we overrule all points of error regarding
an easement by implied dedication and affirm the trial court's conclusion that the Road is private. 

 Having determined that the trial court did not err in finding that the Road is private, we now
must consider whether the Scotts established an easement over the Cannons' property to use the Road. 
The Scotts assert three legal theories to support their claim: easement by estoppel, easement by necessity,
and easement by prescription. We will examine each one in turn.

Easement by Estoppel

 As it relates to easements, the doctrine of equitable estoppel, or estoppel in pais as it is
sometimes called, is a legal theory the exact nature and extent of which has not been clearly defined. See
Storms v. Tiuck, 579 S.W.2d 447, 451 (Tex. 1979); Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196,
209 (Tex. 1962); see also 31A Tex. Jur. 3d Easements & Licenses in Real Property § 40 (1994). 
Generally, the doctrine operates as an exception to the statute of frauds which requires a writing for all
transactions involving land to prevent injustice and protect innocent parties from fraud. Storms, 579
S.W.2d at 451.

 The rule concerning easements by estoppel was first pronounced by the Texas Supreme
Court in Harrison v. Boring, 44 Tex. 255 (1875), wherein the Court stated that:


 The owner of land may create an easement by a parol agreement or representation
which has been so acted on by others as to create an estoppel in pais. As where he has
by parol agreement granted a right of such easement in his land, upon the faith of which the
other party has expended moneys which will be lost and valueless if the right to enjoy such
easement is revoked, equity has enjoined the owner of the first estate from preventing the
use of it.



Harrison, 44 Tex. at 267. The doctrine has since been applied in cases arising out of and involving: (1)
a dedication of a street, alley, or square; (2) an owner selling land with reference to a map or plat; and (3)
a seller of land who allows its purchaser to expend money on an alleged "servient" estate. See Drye, 364
S.W.2d at 209-10. Outside these categories, application of the doctrine is "rare and nebulous." Id. at
209; see also 3 Herbert Thorndike Tiffany, The Law of Real Property §§ 799-801 (1939 & Supp.
1972).

 As more recently stated by the Texas Supreme Court, the doctrine holds that the owner
of land is estopped to deny the existence of an easement by making representations that are acted upon
by a purchaser to his detriment. Storms, 579 S.W.2d at 451; see also Wilson v. McGuffin, 749 S.W.2d
606, 610 (Tex. App.--Corpus Christi 1988, writ denied). Therefore, the basic elements needed to
establish an easement by estoppel are: (1) a representation communicated to a promisee; (2) the
communication is believed; and (3) reliance on the communication. See Lakeside Launches v. Austin
Yacht Club, 750 S.W.2d 868, 872 (Tex. App.--Austin 1988, writ denied) (something must be said or
done by owner of servient estate at time owner grants dominant estate which induced acceptance of
grant to create easement by estoppel).

 None of these elements exists in the present case. First, we believe after reviewing the
cases, that the law requires a vendor/vendee relationship to establish an easement by estoppel. See Drye,
364 S.W.2d 196, 209-10; Wilson, 749 S.W.2d at 610. It is undisputed that no such relationship exists
in the present case. Moreover, any representations made by anyone other than the Cannons or the
Cannons' predecessors in title that caused the Scotts to believe that an easement existed to use the
Cannons' Road are not binding on the Cannons. Tiffany at § 799 (doctrine of estoppel cannot be used to
create right of way over another's land). Therefore, the Scotts' argument that the Cannons' failure to
remove the 1964 Affidavit in which two members of the public proclaimed an easement to use the Road
is insufficient as a matter of law to create an easement by estoppel.

 Second, assuming without deciding that a vendor/vendee relationship is not required to
establish an easement by estoppel, the record does not show conclusively that the Cannons or the
Cannons' predecessors in title made any fraudulent misrepresentations to the Scotts or the Scotts'
predecessors in title. Because equitable estoppel is a fact-oriented doctrine, the trial court as finder of fact
in this case was charged with the responsibility to weigh the evidence. We cannot, on this record, say as
a matter of law that the Cannons affirmatively represented to the Scotts that an easement existed to use the
Road. See Holley, 629 S.W.2d at 696 (Tex. 1982). There was, at most, a passive acquiescence on the
part of the Cannons that was relied upon by the Scotts. Such an acquiescence for no matter how long a
period does not estop the Cannons from denying the Scotts' claim of an easement by estoppel. See
Roberts v. Allison, 836 S.W.2d 185, 187 (Tex. App.--Tyler 1992, writ denied) (use of road does not
estop landowner from denying one's claim of easement).

 We therefore overrule all points of error on the issue of an easement by estoppel and affirm
the trial court's decision declining to find such an easement.


Easement by Necessity

 Texas case law establishes that when a grantor conveys part of a tract of land while
retaining the remaining acreage for itself there is an implied easement by necessity when no other access
exists. The three elements needed to establish an implied easement by necessity are: (1) unity of ownership
prior to separation; (2) access must be a necessity and not merely a convenience; and (3) the necessity
must exist at the time of severance of the two estates. See Koonce v. J.E. Brite Estate, 663 S.W.2d 451,
452 (Tex. 1984). 

 The Scotts' argument that an easement by necessity has been established fails for two
reasons. First, there is no evidence in this record to support the element of unity of ownership. To establish
unity of ownership the Scotts had to prove that prior to severance their grantor, John Ireland, owned both
the alleged dominant and servient estates as a unit or single tract. See id. It is undisputed, as shown above
in the history of each tract's title, that this is not the case. The Scotts derived their title to the Scott Tract
from Ireland while the Cannons derived their titles to the Berkley and Tinney Tracts from Linneweber and
Dr. Garcia respectively.

 Second, the Scotts cannot conclusively show that the use of the Road was an absolute
necessity. It is well established that if a landowner has another way to its property, the landowner cannot
claim by implication the right to pass over another's property. See Daniel v. Fox, 917 S.W.2d 106, 111
(Tex. App.--San Antonio 1996, writ denied). As shown on the map, there is an access, referred to as
the Pound Road, that leads to another public road (denoted on the map as "RR 12"). While the record
shows that the Pound Road is difficult to traverse by vehicle, it is not impossible. The fact that the alternate
route would be inconvenient and expensive does not justify imposing an easement by necessity. See id;
Duff v. Mathews, 311 S.W.2d 637, 640 (Tex. 1958).

 Having concluded that there is no unity of title nor a strict necessity to use the Road, we
overrule all points of error regarding the Scotts' claim of an easement by necessity.


Easement by Prescription

 As distinguished from easements by implied dedication and by estoppel in which one looks
to the intent or actions of the alleged easement's grantor, an easement by prescription rests on the
claimant's adverse actions under a color of right. See Thompson at § 369. To obtain a prescriptive
easement, one must use someone else's land in a manner that is open, notorious, continuous, exclusive, and
adverse for a period of ten years or more. Brooks v. Jones, 578 S.W.2d 669, 673 (Tex. 1979); Wiegand
v. Riojas, 547 S.W.2d 287, 289 (Tex. Civ. App.--Austin 1977, no writ). Here, the only issues that are
disputed concerning the acquisition of a prescriptive easement are exclusivity and adversity.


Exclusivity

 The Cannons argue that because they have jointly used the roadway with the Scotts, the
Scotts cannot prove the element of exclusivity as a matter of law. As authority for their position, the
Cannons cite the following cases: Vrazel v. Skrabanek, 725 S.W.2d 719, 711 (Tex. 1987) (exclusivity
not met when landowner and claimant both used the road); Brooks v. Jones, 578 S.W.2d 669, 673 (Tex.
1979) (when landowner and claimant of easement both use same way, use by claimant is not exclusive of
owner's use and therefore is not adverse); Wilson v. McGuffin, 749 S.W.2d 606, 610 (Tex.
App.--Corpus Christi 1988, writ denied) (when landowner and claimant of prescriptive easement freely
use the road, there is no evidence of exclusive use); Stark v. Morgan, 602 S.W.2d 298, 306 (Tex.
App.--Dallas 1988, writ ref'd n.r.e.) (periodic use by landowner with claimant is enough to show that the
required element of exclusivity was lacking); and International Paper Co. v. Aydelott, 584 S.W.2d 880,
881 (Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.) (use of road was not exclusive as required for
prescriptive easement). 

 The Scotts argue, however, that the authorities for the Cannons' position are distinguishable
from the unique facts of the present case. We agree. In the cases cited by the Cannons and in the cases
we have reviewed dealing with the requirement of exclusivity, the claimants were trying to establish an
easement by prescription based on continuous use alone. There was no evidence in any of those cases
other than use of the road to establish an adverse claim of right. Therefore, it was logical for the courts
in those cases to hold that joint use prevented a prescriptive easement because joint use showed that the
claimant's use was not adverse to the landowner. See Brooks, 578 S.W.2d at 673. We believe that the
facts of the instant case present a case of first impression involving both joint use and independent acts to
show adversity. As such, we hold that the authorities cited by the Cannons are not controlling. See
Thompson at § 343 (absent some decisive act by the user indicating a separate and exclusive use on its
part, a joint use negates adverse intent). Having said this, we will address the Scotts' argument concerning
adversity. 


Adversity

 The hostile and adverse character of the use necessary to establish an easement by
prescription is the same as that which is necessary to establish title by adverse possession. See Othen v.
Rosier, 226 S.W.2d 622, 626 (Tex. 1950); Elliot v. Elliot, 597 S.W.2d 795, 801 (Tex. Civ.
App.--Corpus Christi 1980, no writ); City of Houston v. Church, 554 S.W.2d 242, 245 (Tex. Civ.
App.--Houston [1st Dist.] 1977, writ ref'd n.r.e.). One general test to determine whether a claim is hostile
is whether the adverse possessor's use, occupancy, and possession of the land is of such nature and
character as to notify the true owner that the claimant is asserting a hostile claim to the land. See Elliot,
597 S.W.2d at 801. As this Court has stated, there must be a distinct and positive assertion of a right
which is brought to the servient owner's attention and which is hostile to the owner's rights. Wiegand, 547
S.W.2d at 290.

 The Cannons argue that Mrs. Cannon's testimony that Lee Berkley gave John Ireland
permission to use the Road constitutes some evidence to support the trial court's finding that use of the
Road has always been permissive and therefore no claim for prescription is available. (9) While we agree with
the Cannons that this evidence is sufficient to establish that no easement by prescription existed prior to
1972, the events taking place after that time must be more closely examined.

 It is undisputed that in 1972 the Cannons were made aware of the Scott's claim of right
to use the Road. (10) We believe that this is the type of distinct and positive assertion which we required
in Wiegand to "transform permissive use of an easement into an adverse use." Id. at 290. Moreover, the
Scotts continued to use the Road thereafter even though there is no evidence in the record to show that
after 1972 the Cannons gave the Scotts permission to use the Road or that the Scotts looked to the
Cannons for permission. Finally, the fact that the Scotts helped pay for repairing and maintaining the Road
is inconsistent with the Cannons' claim that it was "their road." Therefore, it was not as the Cannons
believed "a good time to just keep quiet." Irrespective of the disputed testimony which followed the
Cannons' assertion that the Road was not "public," the Scotts' claim of right to use the Road, as well as
the other evidence described above, created the adversity needed to begin the prescriptive period.


 Therefore, because no action was taken from the time the Cannons had notice of the
Scotts' claim of right to the Road in 1972 until this lawsuit was filed in 1996, we hold that the Scotts
established a prescriptive easement to use the Road across the Cannons' property. However, because
the use that gave rise to the easement by prescription was for the limited purpose of ingress and egress to
the Scotts' house, we hold that the Scotts' easement by prescription is limited to residential use and will
not support a commercial activity. Specifically, the prescriptive easement will not support the use of the
Road to maintain and service a Sprint telecommunications tower. While we sustain generally appellant's
points of error regarding the issue of a prescriptive easement, we have expressly limited that easement to
ingress and egress for residential purposes only. Consequently, there remains one issue as noted in an
earlier footnote to be decided by the trial court: whether the Scotts may continue to provide child care out
of their home or whether such activity is a commercial use and thus outside the scope of the prescriptive
easement. We therefore remand this cause to the trial court for a determination of whether the Scotts' use
of their home to provide child care constitutes a commercial activity outside the scope of the prescriptive
easement herein established.


Attorneys' Fees

 In their final points of error, the Scotts challenge the trial court's award of attorneys' fees
pursuant to the Uniform Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West
1986 & Supp. 1998). Because we are remanding this cause for a determination of the scope of the
prescriptive easement, we will also reverse and remand for reconsideration of attorneys' fees in light of our
holding. To that extent, we sustain the Scotts' points of error regarding attorneys' fees.


CONCLUSION

 Having held that the Scotts have obtained a prescriptive easement of ingress and egress
across the Cannons' property for residential use, we reverse the trial court's judgment that no easement
has been established on the Cannons' property and remand for a determination of the scope of the
prescriptive easement. We further reverse and vacate the trial court's injunction prohibiting the Scotts from
using the Road and remand the cause to the trial court for a reconsideration of the issue of attorneys' fees.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Reversed and Remanded

Filed: January 15, 1998

Publish 

1.   A witness testified that he used the Road in the 1920's. Moreover, an aerial photo shows the
existence of the Road in 1937.
2. There is evidence in the record that Lee Berkley did not live on the Berkley Tract when the Scotts
bought their property in 1957. However, there is also evidence in the record that Lee Berkley was living
on the Berkley Tract at least by 1964.
3. The record is unclear as to when Katherine Cannon and her sister inherited the Berkley Tract. 
However, it is clear that Katherine has been the sole owner of the house on the Berkley Tract since she
and her sister made a division of the Berkley Tract in 1988.
4. The Scotts used the Road primarily for purposes of ingress and egress to their tract. However, as
discussed at the end of this opinion, there is some evidence in the record that others used the Road to get
to the Scotts' house for a "child care" arrangement. However, we cannot determine from this record the
nature and scope of this "child care" operation. 
5. The Cannons assert that because easement by implied dedication was not specifically pleaded at the
trial court it is not properly preserved for review. While this appears to be a strong argument, we will
nonetheless address the Scotts' arguments as to this issue on its merits. 
6. We note from the beginning that the Scotts assume a heavy burden in alleging and proving an implied
dedication. Such a finding would result in the appropriation of private property for a public use without any
compensation to the landowner and is thus disfavored in law as contrary to article I, section 17 of the Texas
Constitution. See County of Real v. Hafley, 873 S.W.2d 725, 728 (Tex. App.--San Antonio 1994, writ
denied); see also Tex. Const. art. I, § 17.
7. Implied dedication is sometimes referred to in Texas as "common law dedication" or "dedication by
estoppel." See, e.g., Greenway Parks Home Owners Ass'n v. City of Dallas, 312 S.W.2d 235, 241
(Tex. 1958); Roberts v. Allison, 836 S.W.2d 185, 189 (Tex. App.--Tyler 1992, writ denied); Barstow
v. State, 742 S.W.2d 495, 504 (Tex. App.--Austin 1987, writ denied); Pointdexter v. Schaffner, 162
S.W. 22, 23 (Tex. Civ. App.--Dallas 1913, no writ).
8. There will be no presumption of an intent to dedicate unless it is clearly shown by the landowner's
acts, declarations, or by a line of conduct, the only reasonable explanation for which is that a dedication
was intended. Id. at 838.
9. The Scotts objected to this testimony as inadmissible hearsay and have challenged its admissibility
on appeal. We hold that this testimony is not hearsay under Texas Rules of Civil Evidence 802. Rather,
this testimony is necessary where the utterance or writing is an operative fact. See Merideth v. Eddy,
616 S.W.2d 235, 238 (Tex. Civ. App.--Houston [1st Dist.] 1981, no writ).
10. We agree with the Cannons that the affidavit itself was not sufficient to begin the prescriptive period. 
However, upon discovery of the affidavit by their attorney, the Cannons were given actual notice of the
Scotts' claim that they had a right to use the alleged easement.


at extent, we sustain the Scotts' points of error regarding attorneys' fees.


CONCLUSION

 Having held that the Scotts have obtained a prescriptive easement of ingress and egress
across the Cannons' property for residential use, we reverse the trial court's judgment that no easement
has been established on the Cannons' property and remand for a determination of the scope of the
prescriptive easement. We further reverse and vacate the trial court's injunction prohibiting the Scotts from
using the Road and remand the cause to the trial court for a reconsideration of the issue of attorneys' fees.



 

 Mack Kidd, Justice